**In re GRAND JURY SUBPOENA DUCES TECUM DATED SEPTEMBER 15, 1983**

**MARC RICH & CO. A.G., Intervenor-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 673, Docket 83–6334.**

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1983.

Decided March 27, 1984.

---

Lawrence S. Feld, New York City (Boris Kostelanetz, Edward M. Spiro, New York City), for intervenor-appellant.

Martin J. Auerbach, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Gerard E. Lynch, Sp. Asst. U.S. Atty., New York City), for defendant-appellee.

Before MESKILL, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Intervenor Marc Rich & Co. A.G. ("AG") appeals from so much of an order of the United States District Court for the Southern District of New York, Robert L. Carter, *Judge,* as denied a motion to quash a September 15, 1983 grand jury subpoena duces tecum ("1983 Subpoena") served on AG's former counsel, Proskauer, Rose, Goetz & Mendelsohn ("Proskauer"). Proskauer and AG claimed that many of the documents sought were privileged, either as attorney's work product or as attorney-client confidences. The district court held that the documents at issue on this appeal were not privileged because they related to business, rather than legal, advice; the court appears to have ruled that some of these documents were unprivileged also because they were communications in furtherance of a continuing crime or fraud. The court stayed its order pending this appeal. For the reasons below, we affirm

as to certain of the documents and reverse as to others.

## BACKGROUND

The instant subpoena is only one element in a lengthy grand jury investigation of Marc Rich and his affairs. *See Matter of Marc Rich & Co., A.G.,* 707 F.2d 663 (2d Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983) (*"Marc Rich I"*). On April 15, 1982, the government served on AG a subpoena ("1982 Subpoena") requiring the production of AG's corporate records relating to its transactions in crude oil during 1980 and 1981. AG moved to quash the subpoena for lack of personal jurisdiction and because Swiss law allegedly forbade compliance with the subpoena. These contentions were rejected by the district court, and when AG subsequently defied the court's order to comply with the subpoena it was held in contempt. The district court stayed collection of the penalties imposed, however, pending appeal. We affirmed the district court's contempt order in *Marc Rich I,* 707 F.2d 663, and the Supreme Court denied certiorari on June 27, 1983. — U.S. —, 103 S.Ct. 3555, 77 L.Ed.2d 1400. The district court's order staying collection of the contempt penalties thereupon dissolved.

AG then moved in the district court for relief from the contempt judgment on the basis that AG had been enjoined by a Swiss court from complying with the subpoena. The district court rejected this argument as reliance on a contrived foreign proceeding, and on June 29 it denied appellant's motion and refused to grant a stay pending another appeal. On July 1, AG filed a notice of appeal but did not seek from this Court a stay pending appeal.

AG did not pay the fines accumulating against it, and its counsel advised the government that AG would not pay those fines voluntarily. Consequently, on July 13, the government moved in the district court for an order directing AG to pay or

entering judgment against it in the event that it persisted in its refusal to pay. AG opposed the motion, questioning the district court's jurisdiction since AG's latest appeal was pending, and argued that there did not appear to be any urgency warranting the entry of the judgment sought by the government. AG's counsel stated that "the supposed urgency of having a judgment come in athwart [*sic*] of this Court's order is not visible to me at all." (Affidavit of Assistant United States Attorney Martin J. Auerbach, dated October 18, 1983, at ¶ 19.) On July 15, 1983, the district court entered an order and judgment requiring AG to pay $1,000,000 in accrued contempt fines, and entering judgment of $50,000 per day for continued noncompliance with the subpoena.

On July 20, the government learned of an agreement dated July 7, 1983 ("Sale Agreement"), between AG and its chief executive officer, R. Alec Hackel, pursuant to which AG sold all of its stock in its wholly owned American subsidiary, Marc Rich & Co. International ("International"), to Hackel, for a price to be fixed by AG's accountants at a future date. According to the two-page Sale Agreement, the sale was made retroactive to June 30, 1983, the day after the contempt fines resumed accruing against AG. Construing the Sale Agreement as part of an attempt by AG to make itself judgment-proof, the government began serving restraining orders on United States customers and banking associates of the Marc Rich corporations, a process that resulted in an agreement by AG to pay accrued fines and to comply with the 1982 subpoena.[1]

The 1983 subpoena now before us was served on Proskauer, the law firm that had represented AG during the litigation over the 1982 subpoena. The 1983 subpoena required production of all documents relating to the sale of International by AG, as part of the grand jury's investigation into a possible obstruction of justice by AG, in

---

**1.** The government informs us in its brief on appeal that AG has not fully complied with the 1982 Subpoena and instead has paid more than

$7,950,000 in fines for its failure to abide by the district court's orders.

violation of 18 U.S.C. § 1503 (1982), or conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (1982). Proskauer moved to quash on the grounds that the documents in question are protected either by the privilege for attorney's work-product or by the privilege for attorney-client communications. AG intervened and joined in Proskauer's motion to· quash.

In an oral decision delivered on November 3, 1983, the district court denied the motion in part,[2] ordering the production of documents relating to the sale of International, documents relating to a possible reorganization of the Marc Rich companies, and documents relating to possible forms of employee compensation for AG employees. Although the November 3 transcript is far from clear, it appears that the court ruled that all of these documents were unprivileged because they conveyed business rather than legal advice. It appears that the court also found certain of these documents unprivileged because their contents would subsequently be disclosed to AG employees. As to documents dated prior to July 7, 1983, and involving advice concerning the sale of International, the court also appears to have held that the documents were unprivileged because they related to advice rendered in furtherance of a future or continuing crime or fraud and hence lost any right to protection under the attorney-client privilege.

AG has appealed from so much of the order of November 3 as denied the motion to quash.[3] Documents numbered 0001 to 0197, found unprivileged below, have been submitted to this Court under seal. We

conclude that virtually all of these documents reflect legal advice but that certain of them are excluded from protection by the ongoing fraud exception to the attorney-client privilege.

## DISCUSSION

### A. *Legal vs. Business Advice*

■■■■ We consider first whether the documents at issue on this appeal reflect communications with respect to legal advice that are ordinarily within the ambit of the privilege for attorney-client communications. The privilege attaches

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived . . . .

*United States v. Bein,* 728 F.2d 107 at 112 (2d Cir.1984) (quoting *United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961)); *accord In re Horowitz,* 482 F.2d 72, 80–81 n. 7 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The grant of protection for such communications is designed "to encourage clients to make full disclosure to their attorneys," *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), in order to enable the attorneys to provide sound legal advice. The availability of sound legal advice inures to the benefit not only of the client who wishes to know his options and

---

**2.** The court granted the motion to quash with respect to a group of documents it found privileged. The government has not appealed this ruling.

**3.** We have previously held, in circumstances virtually identical to those here, that a client whose attorney has been ordered to produce documents as to which the client has a privilege that would be defeated by such production may appeal the order as a final order under the doctrine of *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). *See In re Katz,* 623 F.2d 122, 124 (2d Cir.1980); *see generally In re Grand Jury Subpoena for New York*

*State Income Tax Records,* 607 F.2d 566, 570 (2d Cir.1979). In *National Super Spuds, Inc. v. New York Mercantile Exchange,* 591 F.2d ·174 (2d Cir.1979), we dismissed for want of appellate jurisdiction an appeal by a federal commission whose administrator had been ordered to answer at a deposition questions as to which the commission claimed a privilege. We regard *Super Spuds,* in which we noted (a) the administrator's "dutiful[ ]" obedience to the commission's instructions, *id.* at 179, and (b) the fact that any contempt fine would be paid by the commission, *id.* at 180, as distinguishable on its facts from the case at bar.

responsibilities in given circumstances, but also of the public which is entitled to compliance with the ever growing and increasingly complex body of public law. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 392, 101 S.Ct. 677, 682, 684, 66 L.Ed.2d 584 (1981); *Fisher v. United States, supra*, 425 U.S. at 403, 96 S.Ct. at 1577; *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888).

■ As the district court recognized, the privilege is triggered only by a client's request for legal, as contrasted with business, advice. *See In re John Doe Corp.*, 675 F.2d 482, 488 (2d Cir.1982) ("The *Upjohn* privilege is clearly limited to communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it."); *see In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir.1979). We disagree, however, with the district court's application of this limitation to the documents before us. These documents reflect AG's requests for advice from Proskauer relating to three transactions, and as to each our review convinces us that the advice sought was legal rather than commercial in character.

■■ Documents 0001–0076, 0091–0094, 0098, 0126–0142, 0148–0163, and 0187–0188 relate to AG's request for tax advice under Swiss and American law with respect to alternative forms of employee compensation plans for key AG employees. Tax advice rendered by an attorney is legal advice within the ambit of the privilege. *Colton v. United States*, 306 F.2d 633, 637 (2d Cir.), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *see United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir.1982) (dictum); *United States v. Cote*, 456 F.2d 142, 144 (8th Cir.1972) (accountant's work papers used by attorney in advising client privileged; attorney's "decision as to whether the taxpayers should file an amended return undoubtedly involved legal considerations which mathematical calculations alone would not provide").

■ The possibility that some of the information contained in these documents may ultimately be given to AG employees does not vitiate the privilege. First, it is important to bear in mind that the attorney-client privilege protects communications rather than information; the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications. *See United States v. Cunningham*, 672 F.2d 1064, 1073 n. 8 (2d Cir.1982). Thus, the fact that certain information in the documents might ultimately be disclosed to AG employees did not mean that the communications to Proskauer were foreclosed from protection by the privilege as a matter of law. Nor did the fact that certain information might later be disclosed to others create the factual inference that the communications were not intended to be confidential at the time they were made. If confidentiality were not intended, of course, the privilege would not attach, *see In re John Doe Corp., supra;* but we see no indication that confidentiality was not intended. For example, although some of the documents appear to be drafts of communications the final version of which might eventually be sent to other persons, and as distributed would not be privileged, we see no basis in the record for inferring that AG did not intend that the drafts—which reflect its confidential requests for legal advice and were not distributed—to be confidential. Confidentiality may also, of course be waived; but we see no indication that a waiver has yet occurred.

■ The second matter reflected in the documents at issue (documents 0077–0090, 0099–0100, and 0184) is a proposed reorganization of the Marc Rich companies. While the reorganization was apparently being considered by AG for various business purposes, the documents reflect that Proskauer was not consulted for advice on whether the reorganization would in fact secure these business objectives. Rather it was consulted as to the tax consequences of a reorganization and whether those consequences should affect the structure of the corporate realignment, and as to corporate law considerations in structuring the

reorganization. Like the documents relating to employee compensation, these documents memorialize client confidences obtained in the pursuit of legal advice concerning the mechanics and consequences of alternative business strategies. Such material is protected by the privilege.

■■■ The final transaction, as reflected in documents 0095–0097, 0101–0125, 0143–0147, 0164–0183, and 0189–0196, is the sale of International. AG evidently sought Proskauer's advice concerning the legality of the sale. Whatever else it may be (see part B, *infra*, discussing the crime or fraud exception to the privilege), an attorney's opinion as to the lawfulness of a transaction is certainly "legal advice." [4]

■■■ There are two documents that our review persuades us are not privileged. The first is document 0185–0186, which is a status report that mentions the reorganization but contains nothing reflecting any communication of the client or advice by the attorneys. The bare fact that AG consulted Proskauer with respect to a reorganization does not appear to have been treated as confidential either here or in the district court. Accordingly, we do not consider document 0185–0186 privileged. The second document we consider unprivileged is document 0197, which is apparently a blank buck slip.[5]

## B. *The Exception for Prospective or Ongoing Crime or Fraud*

■■■ Having concluded that virtually all of the documents at issue in this appeal reflect the type of advice to which the attorney-client privilege normally applies, we come to the question of whether any of those documents are within the scope of the exclusion for materials prepared in furtherance of a continuing or future crime or fraud. It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct. *See, e.g., Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) (attorney-client); *In re John Doe Corp., supra*, 675 F.2d at 489–93 (attorney-client and work product); *In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir.1983) (work product). The rationale for the exclusion is closely tied to the policies underlying these privileges. Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered "sound." Rather advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection. *See In re International Systems, supra*, 693 F.2d at 1242; *In re Sealed Cases*, 676 F.2d 793, 812–13 (D.C.Cir.1982); *Model Code of Professional Responsibility* DR 7–102(A)(7) (1976). Such communications are properly excluded from the scope of the privilege even if the attorney is unaware that his advice is sought in furtherance of such an improper purpose. *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977).

In the present case, the government, which has of course not been allowed to examine the documents at issue, contends that the documents should be produced because they reflect advice sought by AG in furtherance of an attempt to defraud the United States or to obstruct justice. We find some merit in the government's contentions as to certain of the documents.

As to two categories of document, *i.e.*, those relating to employee compensation

---

**4.** AG contends that document 0164–0166 also constitutes attorney's work product, *see Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), a claim that is amply justified.

**5.** We reject counsel's contention, articulated below, that the blank buck slip is entitled to work product protection as showing the "operation of lawyers' minds." (We would be inclined to view this as a facetious remark were it not for the fact that AG has pursued on appeal the motion to quash the blank buck slip.)

(0001–0076, 0091–0094, 0098, 0126–0142, and 0148–0163) and those relating to the general reorganization of the Marc Rich companies (0077–0090, 0099–0100, and 0184), we see no basis for the view that AG sought Proskauer's advice in furtherance of a fraud or crime. As to the documents relating to the sale of International, however, we conclude that there is a sufficient basis to require the production of documents not dated later than July 20, 1983— the date on which the government first learned of the Sale Agreement—as reflecting the seeking of advice by AG in furtherance of a fraud against the United States.

Preliminarily we note that AG's position is that the government has failed to present sufficient evidence to show that a crime has been committed and has failed to show that its power, if any, to reach the assets of International in satisfaction of the contempt penalties has in any way been affected by the sale by AG of its stock in International. There are several flaws in AG's position. First, AG focuses only on the crime portion of the crime and fraud exception. If the advice was sought in furtherance of a fraud that is not necessarily a violation of the criminal code, the communication is nonetheless unprivileged. Further, AG's assumption that the exception applies only if the seeker of the documents proves that a crime (or fraud) has actually taken place is doubly defective. The crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the client's communication. And the fraudulent nature of the objective need not be established definitively; there need only be presented a reasonable basis for believing that the objective was fraudulent. In *In re John Doe Corp., supra*, we referred to the burden on the party seeking to overcome the privilege in terms of showing probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof. 675 F.2d at 491 & n. 7. Other circuits have referred to the burden in terms of the need to make a prima facie showing. *See, e.g., In re International Systems, supra,* 693

F.2d at 1242; *In re Grand Jury Proceedings,* 689 F.2d 1351, 1352 (11th Cir.1982); *In re Sealed Cases, supra,* 676 F.2d at 814–15. As a practical matter, there is little difference here between the two tests. Both require that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof. *See In re International Systems, supra,* 693 F.2d at 1242 n. 11. Finally, the client need not have succeeded in his criminal or fraudulent scheme for the exception to apply. If a fraudulent plan were ineffective, the client's communications would not thereby be protected from disclosure.

The government, in arguing that the documents are within the crime or fraud exception, has hypothesized that they may show that the sale of International was an obstruction of justice in violation of 18 U.S.C. § 1503, or part of a conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Although we have some doubt that the sale of International is within the purview of either § 1503 or § 371, we think the government has shown adequate reason to believe that the sale was a fraudulent conveyance, in the sense that it was intended to delay or hinder the government's ability to collect the contempt fines that had accrued and that would, in light of AG's intention not to comply with the 1982 subpoena, continue to accrue.

Without purporting to decide the matter, we note that we are skeptical of the government's invocation of § 1503 in light of the apparent thrust and judicial interpretation of that section. Section 1503 provides as follows:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magis-

trate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The section appears to be directed toward attempts to deflect jurors, witnesses, or judicial officials from the proper performance of their duties, rather than generally to reach efforts to frustrate the intended effect of an already rendered judgment. *See United States v. Howard,* 569 F.2d 1331 (5th Cir.) ("Section 1503 does not forbid interferences with doing 'justice,' in the sense of 'fairness' and 'rightness,' although undoubtedly it has an effect to do so. Instead, it forbids interference with the 'administration of justice,' which means judicial procedure."), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *Haili v. United States,* 260 F.2d 744, 746 (9th Cir.1958) (interference with terms of another's probation held not within § 1503, the court noting that "[w]e would be surprised . . . if it were held that conduct designed to encourage a prisoner to escape from a penitentiary could be punished under § 1503"). Our research has disclosed no case upholding a conviction for violation of § 1503 based on conduct intended to remove an unattached asset from the jurisdiction of the court but not to sway a judicial officer, juror, or witness by threat, promise, or deception.

Although the government emphasizes the generality of the phrase "due administration of justice" and points to dicta equating "corruptly" with any evil motive or unlawful purpose, the factual matrices of the cases it relies on, support the more limited interpretation. *See United States v. Rasheed,* 663 F.2d 843, 852 (9th Cir.) (destruction or concealment of documents), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982); *United States v. Ogle,* 613 F.2d 233, 238 (10th Cir.) (attempted delivery of pamphlet to juror advocating jury nullification), *cert. denied,* 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980); *United States v. Fasolino,* 586 F.2d 939 (2d Cir.1978) (per curiam) (defendant asked attorney to exploit his friendship with a federal judge to secure a favorable sentence for defendant's associates); *United States v. Haas,* 583 F.2d 216, 220 (5th Cir.1978) (influencing grand juror), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979); *United States v. Fayer,* 523 F.2d 661 (2d Cir.1975) (attorney representing targets of a grand jury investigation urged a witness not to talk to the authorities); *United States v. Cioffi,* 493 F.2d 1111, 1118–19 (2d Cir.1974) (accused urged a witness to invoke the privilege against self-incrimination and punctuated his suggestions with menacing references to the witness's wife), *cert. denied,* 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1975); *United States v. Abrams,* 427 F.2d 86, 90 (2d Cir.) (attempt to persuade a witness to perjure herself before the Immigration and Naturalization Service), *cert. denied,* 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970).

We also have doubts, on the basis of the present record, as to the validity of the government's resort to § 371. That section reaches conspiracies "to defraud the United States," and a common denominator in the cases in which a § 371 conviction has been upheld is the defendant's agreement to make a false representation. *See, e.g., Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (false affidavits disavowing Communist affiliation); *Hammerschmidt v. United States,* 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924) (false representations to draft-eligible men intended to induce them not to register under the Selective Service Act); *United States v. Turkish,* 623 F.2d 769 (2d Cir.1980) (false income tax deductions),

*cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Porter,* 591 F.2d 1048, 1055–57 & nn. 6–7 (5th Cir.1979) (indictment dismissed in absence of showing of agreement to make a false representation). The present record is inadequate to establish a reasonable basis for believing that AG sought Proskauer's advice in furtherance of such a criminal fraud.

 The record is adequate, however, to support a conclusion that AG's sale of its stock in International may be a fraudulent conveyance within the purview of New York's statutory ban. Section 276 of the New York Debtor and Creditor Law provides that

> [e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y.Debt. & Cred.Law § 276 (McKinney 1945). The fraudulent nature of a conveyance may be inferred from the relationship among the parties to the transaction and the secrecy of the sale, *see United Parcel Service v. Jay Norris Corp.,* 102 Misc.2d 231, 233, 423 N.Y.S.2d 125, 127 (S.Ct.1979), or from inadequacy of consideration and hasty, unusual transactions, *see Gafco, Inc. v. H.D.S. Mercantile Corp.,* 47 Misc.2d 661, 664, 263 N.Y.S.2d 109, 114 (S.Ct.1965) ("Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud.'").

 It appears to us that the government has made a prima facie showing that the sale by AG was fraudulent within the meaning of § 276. Without having resort to the documents themselves, the government has demonstrated that the sale of International was accomplished by a two-page document having few of the trappings normally accompanying a transaction of such magnitude. The transaction was hardly between strangers; the purchaser was AG's chief executive officer. And the

adequacy of the compensation cannot be evaluated: the purchase price remains undetermined. All of these factors suggest a haste from which one might infer that the timing of the sale was of the essence to AG, an inference supported by the fact that the Sale Agreement, itself dated July 7, 1983, stated that the effective date of the sale was June 30. Thus from all appearances, a hasty transaction was put together to be effective on the day after the stay was lifted from the collection of the contempt fines from AG. AG informed the government that it had no intention of paying the fines voluntarily, and we are persuaded that these factors suffice for a prima facie showing that AG intended the sale of its stock in International to hinder or delay the government's collection of moneys owing or about to be due from it. Hence there is a sufficient basis for inferring that the advice sought from Proskauer in connection with the proposed sale of International was sought in connection with a fraud.

Advice sought in furtherance of a future or ongoing fraud is unprivileged; communications with respect to advice as to past or completed frauds are within the privilege. Plainly any documents reflecting communications made prior to the July 7, 1983 date of the Sale Agreement are thus unprotected. In addition, given the nature of the prima facie fraudulent conduct here, *i.e.,* the intent to hinder or delay the government's collection of moneys owing to it, we believe it a reasonable inference that nondisclosure of the fraudulent conveyance was an integral part of AG's ostensible plan to prevent collection. Accordingly, we think it appropriate to construe, for these purposes, communications prior to the government's discovery (inadvertently on July 20) to have been in furtherance of an ongoing fraud. *See In re John Doe Corp., supra,* 675 F.2d at 491 (subsequent communications in cover-up of criminal scheme excluded from the privilege).

On this basis, we conclude that documents that do not bear a date later than July 20, 1983, are excluded from privileged

status to the extent that they refer or relate to the sale of International. These are the documents numbered 0095–0097, 0101–0125, 0143–0147, 0164–0166, 0179–0183, and 0193–0196. Documents relating to the sale and dated after July 20, 1983 (0167–0178 and 0189–0192) are within the scope of the privilege.

### CONCLUSION

That portion of the district court's order which denied the motion to quash as to documents 0185–0186 and 0197 is affirmed, and as to documents 0095–0097, 0101–0125, 0143–0147, 0164–0166, 0179–0183, and 0193–0196 is affirmed insofar as those documents refer or relate to the sale of International. With respect to all other documents at issue on this appeal, the denial of the motion to quash is reversed.