**FIRST FEDERAL SAVINGS BANK OF HEGEWISCH, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**No. 93–162C.**

United States Court of Federal Claims.

Feb. 12, 2003.

Theodore A. Shapero, Chicago, Illinois, attorney of record for plaintiff and Mark A. Rabinowitz, co-counsel, Chicago, Illinois.

Edward Sullivan, Department of Justice, Washington, D.C., with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Jeffrey T. Infelise, Of Counsel.

### OPINION and ORDER

FUTEY, Judge.

This matter is before the court on defendant's motion to compel production of minutes from plaintiff's board of directors meetings (board minutes). The legal questions involved raise important issues about the scope of the attorney-client privilege. The parties dispute whether the attorney-client privilege was waived by either the presence of accountants at the board of directors meetings or by plaintiff's disclosure of board minutes to its accounting firm during annual audits.

### Factual Background

On July 3, 2002, following a trial on liability, the court issued an opinion in this case addressing contractual liability and defendant's special plea in fraud claim. The court held that this case fell within the *Winstar* scenario and that the parties had a contractual relationship that allowed plaintiff to use the purchase method of accounting and to include supervisory goodwill for regulatory capital compliance purposes.[1] Further, the court held that the defalcation could not be imputed to plaintiff and that defendant did not establish that a misrepresentation oc-

---

1. *First Federal Sav. Bank of Hegewisch v. United States,* 52 Fed.Cl. 774, 782, 798–99 (2002).

curred.[2] The court, therefore, rejected defendant's special plea in fraud claim. In turn, because defendant did not establish that plaintiff committed any fraud, the court rejected defendant's rescission claim.[3] Since the court has already ruled on liability, the case is currently before the court to determine damages.

As a basis for discerning the amount of purported damages, defendant seeks the production of plaintiff's board minutes from the fiscal years ending June 30, 1991 through June 30, 1997. The board minutes contained privileged communications between plaintiff's board of directors and plaintiff's counsel, Kemp & Capanna (K & C).[4] Given the confidential nature of the communications, the purposes for which said board minutes were disclosed are particularly pertinent to the court's inquiry.

The board minutes were first utilized in ascertaining the extent of the defalcation. On September 27, 1991, plaintiff discovered the defalcation committed by its former executive vice-president. Subsequently, plaintiff's board of directors ordered K & C to investigate the defalcation. K & C then engaged plaintiff's accounting firm, KPMG Peat Marwick (KPMG), to perform special accounting procedures to assist them in their investigation.[5] Beginning in October 1991, KPMG performed said procedures for a nine-month period and reported its findings to K & C. Throughout its engagement, KPMG was granted access to plaintiff's unredacted board minutes.

Apart from the special accounting procedures, KPMG also conducted annual audits of plaintiff's financial statements for the fiscal years ending June 30, 1991 through June 30, 1997. To understand the intricacies of an annual audit, a brief discussion of pertinent accounting standards is warranted. When conducting an annual audit, accountants are required to base their opinion on "sufficient competent evidential matter."[6] The accounting standards enumerate board minutes as "corroborating evidential matter" and instruct accountants to obtain written representation as to the "[c]ompleteness and availability of all minutes of meetings of ... directors, and committees of directors."[7] Further, accountants are to read and scrutinize the board minutes.[8] Pursuant to these accounting principles, KPMG received and read the unredacted board minutes "in connection with the preparation and issuance of an audited financial statement of the company."[9]

Defendant avers that the disclosure of unredacted board minutes to KPMG during annual audits, which contained privileged communications between plaintiff's board of directors and K & C, constituted a waiver of the privilege. On September 10, 2002, defendant filed a motion to compel the production of board minutes. Then on October 4, 2002, plaintiff filed its response and on October 17, 2002, defendant filed its reply. As required by RCFC 37(a)(2)(A), defendant certified that it attempted to secure disclosure from

2. *Id.* at 791–95.

3. *Id.* at 797–98.

4. Plaintiff provided defendant with a privilege log in which plaintiff detailed its basis for invoking the privilege. The party opposing the privilege must then demonstrate a prima facie case of waiver. Paul R. Rice, *Attorney–Client Privilege in the United States* § 9:20, at 53 (2d ed.1999). Defendant, however, has not made a showing that the privilege was waived by the presence of unnecessary third parties at the board of directors meetings. Further, given the court's ultimate conclusion in this case, the court will assume that the communications were initially privileged.

5. The special accounting procedures were in the nature of a fraud audit. Capanna Affidavit (Ca-

panna Aff.) ¶ 7. In particular, "KPMG performed certain specific procedures regarding potentially suspicious transactions such as money orders, but made no findings or conclusions. KPMG also confirmed the location of certain investment securities held by third party custodians and performed other miscellaneous procedures regarding [plaintiff's] operations." Capanna Aff. ¶ 12.

6. Auditing Standards Board of the American Institute of Certified Public Accountants, *Codification of Statements on Auditing Standards* § 326.01 (1995).

7. *Id.* § 326.16, § 333.04(c).

8. *Id.* § 337.07(a), § 560.12(c), § 334.08(b).

9. Capanna Aff. ¶ 18.

plaintiff without court intervention.[10] Defendant's motion to compel is therefore properly before the court.

On December 12, 2002, the court issued an order directing plaintiff to demonstrate through an affidavit that any board minutes disclosed to KPMG were solely for the purpose of assisting K & C in rendering legal advice or, in the alternative, that precautions were taken during annual audits to shield privileged communication contained in the board minutes.[11] In response, plaintiff filed the affidavit of Mr. Armand Capanna, a partner at K & C from 1989 until 1993.

### Discussion

■ Before analyzing the merits of defendant's waiver argument, the court enumerates the essential elements of the privilege. The privilege is properly invoked where:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and] ... (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding [and] ... (4) the privilege has been (a) claimed and (b) not waived by the client.

*Energy Capital Corp. v. United States,* 45 Fed.Cl. 481, 484–85 (2000) (citing *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950)).

■ The privilege "encourages complete disclosure of information in the nature of confidential communications by a client to the attorney during the attorney-client relationship." *CIT Group/Equip. Fin. v. United States,* 24 Cl.Ct. 540, 541 (1991) (citation omitted); see *Upjohn Co. v. United States,*

449 U.S. 383, 389–91, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1037 (2d Cir.1984). The privilege "evaporates upon any voluntary disclosure of confidential information to a third party ...." *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990). Further, the privilege impedes the search for truth and is therefore to be strictly construed. *Energy Capital,* 45 Fed.Cl. at 484.

■ The privilege is not restricted to individuals, but may be invoked by a corporate entity. *Upjohn,* 449 U.S. at 390, 101 S.Ct. 677. Although in the corporate context the privilege was initially limited to the "control group," the privilege has been extended to middle and lower level employees when certain criteria are met. *Id.* at 389–91, 101 S.Ct. 677. The privilege has also been widened to encompass communications between an attorney and an agent of the client or attorney to assist in the rendition of legal advice. *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989). Classification as an agent, in and of itself, is not sufficient to sustain the privilege. *Cavallaro v. United States,* 284 F.3d 236, 247 (1st Cir.2002) ("[The court] note[s] that the agency relationship between the parties is relevant to, but not dispositive of, [the] question."). The services provided by the agent must also be related to the rendition of legal advice. *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961). The appropriateness of a corporation's invocation of the privilege is decided on a case-by-case basis. *Upjohn,* 449 U.S. at 396–97.

■ The court must first resolve the issue of which party bears the burden of persuasion, the party asserting the privilege or the party opposing it. Plaintiff contends that the privilege was not waived because defendant

---

10. Defendant's Motion to Compel, Exhibit (Ex.) 1–4; Defendant's Reply to Plaintiff's Response in Opposition to the Government's Motion to Compel (Def.'s Reply) at 2–3. The parties have referred to the appendices attached to their filings as exhibits. The court will therefore cite to these documents as exhibits.

11. *First Federal Sav. Bank of Hegewisch v. United States,* No. 93–162 (Fed.Cl. Dec. 12, 2002) (order concerning disclosure of board minutes).

"has not established that [plaintiff] actually produced the minutes to its auditors."[12] The prevalent practice, however, contradicts plaintiff's assertion.[13] The party asserting the privilege has the initial burden of establishing the elements of the privilege. Once this showing is made, the burden shifts to the party opposing the privilege to establish a prima facie case of waiver. In this case, defendant met its burden by referencing accounting standards which indicate that board minutes were disclosed to and read by KPMG during annual audits.[14] Next, the burden shifts back to the party asserting the privilege "to rebut the prima facie case by demonstrating that the privilege is still viable."[15] Therefore, in sum, plaintiff must not only establish that the privilege applied, but also that the privilege was not waived.[16]

■ In the corporate context, the United States Supreme Court (Supreme Court) rejected the "control group" test and recognized that attorneys will frequently need to speak to officers and agents to provide the corporation with competent legal advice. *Upjohn*, 449 U.S. at 391, 101 S.Ct. 677. This court has also concluded that "[i]n appropriate circumstances, a person may share information received from its attorney with third parties and not waive the attorney-client privilege ...." *Energy Capital*, 45 Fed.Cl. at 491; see also *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir.1994) (citing John E. Sexton, *A Post–Upjohn Consideration of the Corporate Attorney–Client Privilege*, 57 N.Y.U.L. REV. 443 (1982)). Being bound by Supreme Court precedent, and finding the reasoning of *Energy Capital* persuasive, the court holds that in limited circumstances the disclosure of

privileged information to an agent will not waive the privilege.

This conclusion then begs the question: whether KPMG was plaintiff's agent. Plaintiff must present a "detailed factual showing" to that effect. *Energy Capital*, 45 Fed.Cl. at 488–94; *In re Bieter*, 16 F.3d at 938. The case law and legal scholarship indicate that an accounting firm's relationship to a client can justify application of the privilege. *In re Bieter*, 16 F.3d at 938; *Sexton*, 57 N.Y.U.L. REV. at 498 ("There is no reason to differentiate between an accountant-employee and a regularly retained outside accountant ...."). Plaintiff has provided an affidavit, and a deposition,[17] outlining the extent of KPMG's involvement in the investigation immediately following the discovery of the defalcation. Plaintiff has also provided an acceptance letter from KPMG to K & C extensively documenting the special accounting procedures KPMG was to provide.[18] Under K & C's directive, KPMG performed said procedures, in regard to the defalcation, for a nine-month period. In addition, KPMG conducted plaintiff's annual audit for the fiscal years ending June 30, 1991 through June 30, 1997.[19] Accordingly, the court is satisfied that plaintiff has made a "detailed factual showing" that KPMG was its agent.

Having recognized the viability of a limited exception permitting disclosure of privileged information to an agent, the court must next determine the exact circumstances in which disclosure to an agent will not waive the privilege. The cornerstone of the privilege has always rested on the notion that the communication must be for the purpose of securing or rendering legal advice. *United Shoe Machinery*, 89 F.Supp. at 358–59. This

---

12. Plaintiff's Response In Opposition to the Government's Motion to Compel (Pl.'s Resp.) at 2.

13. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir.2000); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984); *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir.1994) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir.1977) (en banc)); *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995); *Cavallaro*, 284 F.3d at 246; *Energy Capital*, 45 Fed.Cl. at 491; *Cabot v. United States*, 35 Fed.Cl. 442, 444 (1996).

14. *Auditing Standards* § 333.04(c), § 337.04(a).

15. *Attorney–Client Privilege in the United States* § 9:20, at 53 (footnotes omitted).

16. *Id.* at 49–54.

17. Plaintiff has provided portions of Mr. Donald Coglianese's deposition. Pl.'s Resp., Ex. J. Mr. Coglianese was the auditing partner during the time period in question. *Id.*, Ex. J at 66.

18. Pl.'s Resp., Ex. 1.

19. *Id.*, Ex. J, at 80–81.

principle applies with equal force to an employee of a corporation or a corporation's agent. *Cavallaro,* 284 F.3d at 247 n. 7. The communication of privileged information, or disclosure of privileged documents, must be related to the rendition of legal advice. *In re Bieter,* 16 F.3d at 936 (citing *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir.1977) (en banc)); *Dorf & Stanton Communications, Inc. v. Molson Breweries,* 100 F.3d 919, 927 (Fed.Cir.1996) (Newman, J., dissenting) (explaining that the privilege extends to agents of a corporation where the communication concerns the corporation's legal interests); *Eglin Fed. Credit Union v. Cantor, Fitzgerald Sec. Corp.,* 91 F.R.D. 414, 419 (N.D.Ga.1981).

When addressing the merits of defendant's waiver argument, the court will bifurcate KPMG's performance into two separate conceptual periods. First, the nine-month period, approximately October 1991 to June 1992, in which KPMG performed special accounting procedures to ascertain the extent of the defalcation. Second, KPMG's performance of annual audits of plaintiff's financial statements for the fiscal years ending June 30, 1991 through June 30, 1997, which included the board minutes previously disclosed to KPMG during its performance of special accounting procedures.

■ First, the disclosure of privileged documents to KPMG during its performance of special accounting procedures from approximately October 1991 to June 1992 do not operate to waive the privilege. The Capanna affidavit indicates that KPMG was retained to aid in the investigation of the defalcation.[20] Lawyers frequently experience difficulty when interpreting and applying accounting principles and some courts have gone to the extent of equating accounting principles with a foreign language. *Kovel,* 296 F.2d at 922. Pursuant to an order from plaintiff's board of directors, K & C engaged KPMG in order to "obtain KPMG's assistance in providing legal advice to [plaintiff] regarding the Defalcation Issue and regulatory compliance matters." [21]

Given the complexity of the accounting issues surrounding the extent of the defalcation, the court is persuaded that these procedures were related to the rendition of legal advice. *Kovel,* 296 F.2d at 922. Therefore, for the nine-month period where KPMG performed special accounting procedures to assist K & C in providing plaintiff with legal advice, plaintiff did not waive the privilege by disclosing the board minutes to KPMG for that purpose.

The court next examines the privileged documents that were disclosed to KPMG during the course of annual audits conducted for the fiscal years ending June 30, 1991 through June 30, 1997.[22] Although on occasion seamlessly intertwined, there is nevertheless a sharp distinction between legal and business advice; the privilege protects only the former, and not the latter. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1037. "Without [a] showing that [the] communications are part of [an] effort to secure legal advice, every [communication] between a corporate employee and corporate counsel could be confidential, which would expand the privilege far beyond its bounds and unnecessarily frustrate the efforts of others to discover corporate activity." *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* 654 F.Supp. 1334, 1365 (D.D.C.1986).

■ The overwhelming weight of authority on the subject matter indicates that the privilege is waived when privileged documents are disclosed to an agent for a purpose unrelated to the rendition of legal advice. *Cavallaro,* 284 F.3d at 247–48 (citing *Kovel,* 296 F.2d at 922); *United States v. Adlman,* 68 F.3d 1495, 1499–1500 (2d Cir.1995); *In re Bieter,* 16 F.3d at 938–40 (explaining that the purpose of the communication or dissemination to the agent must be for the purpose of seeking legal advice); *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000). The Auditing Standards make clear, and plaintiff concedes,[23] that plaintiff disclosed unredacted board minutes to KPMG, which KPMG read and scrutinized, "in connection

---

**20.** Capanna Aff. ¶ 7.

**21.** *Id.* ¶ 10.

**22.** Pl.'s Resp., Ex. J at 80–81.

**23.** Capanna Aff. ¶¶ 17–18.

with the preparation and issuance of an audited financial statement of the company."[24] Apart from the Auditing Standards, KPMG also "certified that [plaintiff's] financial statements are fairly presented in accordance with generally accepted accounting principles."[25] Although Capanna asserts that board minutes were disclosed to KPMG during annual audits "to assist [plaintiff's] counsel in rendering legal service to [plaintiff][,]"[26] when plaintiff disclosed the unredacted board minutes to KPMG during annual audits, it was seeking an accounting service independent of the rendition of any legal service.[27] The audit statements make clear that the annual audits were "made for the purpose of forming an opinion on the consolidated balance sheet taken as a whole."[28] Just as documents transmitted to an agent for the preparation of a tax return are not privileged, documents transmitted to an agent for the preparation of an audited financial statement likewise are not privileged. See *In re Grand Jury Proceedings*, 220 F.3d at 571 ("A tax payer should not be able to invoke a privilege simply because he hires an attorney to prepare his tax returns."). Therefore, any documents disclosed during annual audits following the nine-month investigation are not afforded the protection of the privilege.

■ The court must also explicitly address the privileged communications that were disclosed both during the nine-month investigation and during annual audits. In regard to these documents, defendant correctly contends that the privilege was waived irrespective of the special accounting procedures performed by KPMG because the board minutes were subsequently disclosed during annual audits. Simply put, a dual purpose document is not privileged. *United States v. Frederick*, 182 F.3d 496, 501 (7th Cir.1999). The unredacted board minutes disclosed to KPMG when it performed special accounting procedures during the nine-month investigation were ancillary to the legal services that plaintiff's counsel was providing. When the unredacted board minutes were disclosed for accounting purposes, however, KPMG was performing a public service exclusive of any information that it may have been providing to K & C. *United States v. Arthur Young & Co.*, 465 U.S. 805, 818, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). The disclosure of unredacted board minutes to KPMG during its performance of special accounting procedures did not waive the privilege, but the disclosure of those same unredacted board minutes during annual audits waived the privilege as to those board minutes. *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir.1987) ("Documents used in both preparing tax returns and litigation are not privileged."); *Eglin*, 91 F.R.D. at 419 (explaining that the privilege is waived where documents were disclosed to accountants for legal purposes and for audit purposes). Plaintiff therefore waived the privilege as to

---

24. *Id.* ¶ 18.

25. *Id.* ¶ 23.

26. *Id.* ¶ 20. Although plaintiff provided an acceptance letter from KPMG to plaintiff's counsel which detailed the special accounting procedures KPMG was to perform, Pl.'s Resp., Ex. 1, plaintiff's appendix is conspicuously silent as to any such letter regarding the annual audits of plaintiff's financial statement. Further, the cover letters attached to the Independent Auditors' Report were addressed directly to "The Board of Directors' First Federal Savings of Hegewisch" and make no mention of K & C. *Id.*, Ex. 3, 5–6. The Coglianese deposition also indicated that while information regarding the defalcation may have been relevant to the annual audit, *Id.*, Ex. J at 81, its purpose was to ascertain "if the financial statements are fairly presented in accordance with generally accepted accounting principles." *Id.*, Ex. J at 78–79.

27. Plaintiff was given the opportunity to submit an affidavit attesting that the disclosure of any unredacted board minutes to KPMG at any point was solely for the purpose of assisting plaintiff's counsel in rendering legal advice. *First Federal Sav. Bank of Hegewisch v. United States*, No. 93–162 (Fed.Cl. Dec. 12, 2002) (order concerning disclosure of board minutes). The import of this statement was clear and it included the entire time period up to and including the fiscal year ending June 30, 1997. Capanna, however, only has personal knowledge of events occurring prior to the conclusion of 1993. Capanna Aff. ¶ 4. Plaintiff has, therefore, failed to meet its burden on this basis for any board minutes disclosed after 1993.

28. Pl.'s Resp., Ex. 3, 5–6.

all unredacted board minutes disclosed during the special accounting procedures and during annual audits.[29]

Allowing disclosure here conforms with the fundamental purpose of the privilege. Plaintiff cannot seriously contend that its disclosure to KPMG would not have occurred absent the privilege.[30] Plaintiff made a conscious decision to disclose the privileged communications for a matter unrelated to the rendition of legal advice. In fact, plaintiff made the same decision on a yearly basis from approximately 1992 to 1997. The court's holding does not stifle communication, but merely reinforces the cornerstone of the privilege that the disclosure must be solely related to the rendition of legal advice. *In re Grand Jury Proceedings*, 220 F.3d at 571.

Lastly, the court briefly addresses plaintiff's relevance argument. Plaintiff asserts that the board minutes are irrelevant because they pertain to unrelated litigation as well as plaintiff's investigation of the defalcation, an issue previously resolved by this court. Defendant avers that "[t]he competency of plaintiff's management is particularly relevant to the issue of whether the breach which this Court held occurred was the cause of any loss suffered by the plaintiff or whether any such loss would have resulted regardless of whether the government committed a breach."[31]

The court favorably commented on plaintiff's management in its July 3, 2002, Opinion and Order: "the court believes that plaintiff did have strong management and was operated in a safe and sound manner ...."[32]

Relevant evidence, however, is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401; Cf. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (construing Federal Rule of Civil Procedure 26(b) as "encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). The court, therefore, finds the board minutes only relevant for the limited purpose of ascertaining the amount of purported damages.[33]

### Conclusion

For the above-stated reasons, defendant's motion to compel production of board minutes is GRANTED. Plaintiff is directed to immediately release to defendant its board minutes from the fiscal years ending June 30, 1991 through June 30, 1997.

IT IS SO ORDERED.

---

29. In 1998, Congress enacted legislation that established a limited accountant-client privilege. Pub.L. No. 105–206, title III, § 3411, 112 Stat. 685, 751 (codified at 26 U.S.C. § 7525 (Supp. V 1999)). The legislation is applicable to communications occurring after July 22, 1998. *Id.* § 3411(c). All communications implicated by defendant's motion occurred prior to July 22, 1998. Further, plaintiff does not specifically argue that its communications are protected by the accountant-client privilege. Rather, plaintiff only asserts: "While there is no accountant-client privilege under federal law, the existence of the Illinois privilege demonstrates the confidential nature of the accountant-client relationship." Pl.'s Resp. at 9 n. 5. The court, however, declines to depart from *Couch v. United States*,

409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) ("[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases.").

30. See *Sexton*, 57 N.Y.U.L. REV. at 490–93.

31. Def.'s Reply at 5.

32. *Hegewisch*, 52 Fed.Cl. at 796.

33. As defendant indicated in the October 31, 2002, telephonic conference, the board minutes are not being sought to revisit contractual liability.