**UNITED STATES of America,**

v.

**John TOMERO, et al., Defendants.**

**No. S16 06 CRIM. 0008(LAK).**

United States District Court, S.D. New York.

Jan. 25, 2007.

See also 2006 WL 3404770.

Miriam Rocah, Jonathan Kolodner, Eric Snyder, Assistant United States Attorneys, Michael J. Garcia, United States Attorney, New York City, for U.S.

Barry Levin, Sabrina C. Bellomo, New York City, for Defendant Liborio Bellomo.

Michael Rosen, New York City, for Defendant Gerald Fiorino.

Robert Leighton, New York City, for Defendant James Pisacano.

Murray Richman, New York City, for Defendant Joseph Pisacano.

Michael Washor, New York City, for Defendant Claudio Caponigro.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Fifteen defendants are charged with various crimes associated with the Genovese organized crime family. Five move to suppress intercepted communications they had with an attorney named Peter Peluso. They claim that the conversations are protected by the attorney-client privilege.[1]

### Background

#### I. The Investigation

The indictment stems from a three-year investigation of the Genovese family. It focused initially on John Ardito, a high-ranking member, and Ardito's close associate, an attorney named Peter Peluso. Beginning in January 2003, the government installed listening devices in frequent meeting places. It then learned that Peluso was acting, in the government's view, as "house counsel" to several members of the family and engaging in criminal activity himself. According to the government, the investigation revealed also that Peluso's

---

1. Two additional defendants who joined this motion since have pleaded guilty pursuant to plea agreements with the government. Salvatore Larca on December 21, 2006 pleaded guilty to racketeering conspiracy, conspiracy to commit mail fraud, and conspiracy to traffic firearms. Albert Faella on January 10, 2007 pleaded guilty to conspiracy to obstruct justice. In addition, John Ardito, who joined this motion, died on December 31, 2006. Accordingly, these defendants' motions are moot.

primary function in the family was not to give legal advice, but to relay messages to and from high-ranking family members who were wary of government surveillance and used Peluso as a messenger to avoid meeting together directly.

In February 2004, the government expanded its investigation to include a listening device, colloquially known as a "roving bug," installed in Peluso's cellular telephone.[2] The intercept order was renewed several times until January 2005, when Peluso met with FBI agents and agreed to cooperate with the government's investigation.[3] Peluso subsequently wore a wire that permitted recording of his conversations. By the conclusion of the investigation, the government had intercepted hundreds of hours of conversations between and among Peluso and various defendants.

On January 4, 2006, a grand jury returned the initial indictment, which charged only two defendants. Now before the Court is a 30–count superceding indictment naming fifteen defendants.[4] Defendants Claudio Caponigro, Gerald Fiorino, and James and Joseph Pisacano move to suppress intercepted conversations that they claim are protected by the attorney-client privilege. Defendant Liborio Bellomo, whose conversations with Peluso were not intercepted, joins this motion, claiming that the government intercepted conversations in which Peluso divulged confidential information that Bellomo had imparted to him.

## II. Past Attorney–Client Relationships

There is limited evidence concerning the existence of attorney-client relationships between defendants and Peluso.

The government acknowledges that Peluso represented (1) Bellomo in past criminal cases and other legal proceedings, including a 1996 criminal case before this Court and a 2002 criminal case in the Eastern District of New York,[5] (2) Fiorino in a civil matter in small claims court "years ago," [6] and (3) Joseph Pisacano in an unrelated murder case.[7] The government acknowledges also that Caponigro approached Peluso twenty years ago in connection with a federal grand jury subpoena, but disputes that he ever retained Peluso.[8]

There is no further evidence concerning Peluso's past representation of the defendants other than unsubstantiated assertions in briefs and in attorney affidavits not based on personal knowledge.

### Discussion

The scope of the attorney-client privilege is clear: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) to or by

---

**2.** The listening device operated whether the telephone was powered on or off, recording communications within its range wherever it happened to be.

**3.** Peluso eventually pleaded guilty, pursuant to a cooperation agreement with the government, to a four-count information, charging him with, *inter alia,* racketeering.

**4.** Fifteen superceding indictments were returned between January 4, 2006 and January 12, 2007, the date the present indictment was filed. Seventeen defendants charged in vari-

ous of those superceding indictments have pleaded guilty.

**5.** Government Br. 21 & n. 6.

**6.** Hearing, Nov. 14, 2006 ("Hearing") at 41.

**7.** *Id.* at 42. The government referred vaguely to representation of "the Pisacanos," but appeared to concede only that Peluso represented "Joey Pisacano in a murder case." *See id.*

**8.** Government Br. 22.

the client, lawyer, or persons assisting the rendition of legal services (6) are at the client's instance permanently protected (7) from disclosure, (8) except the protection be waived.[9] Although privileged communications do not lose protection simply because the attorney-client relationship ends,[10] communications that occur after the termination of the attorney-client relationship are not privileged because the attorney no longer acts in his or her capacity as such.[11]

■ The burden of establishing the attorney-client privilege rests with the party asserting it.[12] Moreover, "[a] party seeking to raise a factual issue to be determined at a hearing must submit admissible evidence which, if credited, would make out a *prima facie* case on the issue. This in turn requires that the issue ordinarily be raised by an affidavit of a person with personal knowledge of the facts."[13] In the absence of sufficient evidence, a motion

will be denied without a hearing.[14] The preliminary question therefore is whether any defendant has offered competent evidence that, if credited, could sustain a finding that (1) an attorney-client relationship existed between him and Peluso at times relevant to this case, or (2) Peluso divulged information that was privileged by virtue of his former representation.

## I. Bellomo

Bellomo's situation is unique because his conversations with Peluso were not intercepted. Bellomo claims, however, that Peluso divulged privileged information to the other defendants during conversations that were intercepted.

■ The government concedes that Bellomo had an attorney-client relationship with Peluso immediately before and shortly after the government's investigation began. There is a possibility that Bellomo

9. *See, e.g., In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness,* 265 F.Supp.2d 321, 324–25 (S.D.N.Y.2003) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1036 (2d Cir.1984)).

10. *See, e.g., Swidler & Berlin v. United States,* 524 U.S. 399, 406, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (recognizing general rule that the attorney-client privilege survives even the death of the client); *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953) ("A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship."); PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 2:5 (2d ed. 1999) ("In all circumstances, other than [in will contests], the privilege survives the death of the individual client, the discontinuation of an entity client such as a corporation or trust, the termination of the trial or lawsuit to which the communication related, and the termination

of the attorney-client relationship that gave rise to the communication." (citing cases)).

11. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 2:4 ("When the attorney's representation of the client ends, further communications between the attorney and her former client are no longer protected by the attorney-client privilege."); *cf. United States v. Bein,* 728 F.2d 107, 112–13 (2d Cir.1984) (communications with accountant while he participated in attorney meetings and facilitated attorney-client relationship were protected, but communications made after legal advice had been obtained were not).

12. *United States v. Int'l Bhd. Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL–CIO,* 119 F.3d 210, 214 (2d Cir. 1997) (citing *United States v. Schwimmer,* 892 F.2d 237, 244 (2d Cir.1989)).

13. *United States v. Stein,* 440 F.Supp.2d 315, 327 (S.D.N.Y.2006) (quoting *United States v. Ahmad,* 992 F.Supp. 682, 685 (S.D.N.Y. 1998)).

14. *Id.* at 327 & n. 60 (citing cases).

imparted confidential information relevant to the present case to Peluso and that Peluso then disclosed it. Bellomo's motion cannot be decided, however, until the government reveals which conversations it proposes to introduce.[15]

## II. The Remaining Defendants

■ The remaining defendants have failed to meet their burden. With the exception of Fiorino, none filed affidavits based on personal knowledge in connection with this motion.[16] Moreover, Fiorino's conclusory assertion that "Peluso ... represented [him] as an attorney"[17] is insufficient to establish that Peluso represented him at times relevant to this case. To the extent the government acknowledges that Peluso represented these defendants, such representation either was remote in time or in unrelated matters. In other words, Peluso's former representation of these defendants does not establish by itself that his attorney-client relationship with them was ongoing, or that he divulged privileged information during the government's investigation.

15. The government concedes that at least some conversations will raise a genuine dispute about privilege and that those can be addressed in an in limine motion. *See* Hearing 12–14.

16. Indeed, James and Joseph Pisacano did not even file motions. They simply wrote a letter to the Court, dated September 14, 2006, in which they requested to join. Their attorneys appeared also at oral argument on November 14, 2006, and repeated the request. *See* Hearing 36, 39. Neither of these attempts to join the motion was proper.

The FEDERAL RULES OF CRIMINAL PROCEDURE require all pretrial motions to be in writing, unless the Court permits otherwise, FED. R.CRIM.P. 12(b)(1), 47(b), and filed with the Court, FED.R.CRIM.P. 47(d). This Court requires motion papers to be filed electronically. *See* S.D.N.Y. CIV. R. 5.2; Procedure 1(a), Procedures for Electronic Case Filing,

## Conclusion

Defendants' motions to suppress, except Bellomo's, are denied. The Court reserves decision on Bellomo's motion pending the government's disclosure of what conversations it intends to introduce at trial.

SO ORDERED.

*available at* http://www1.nysd.uscourts.gov/ ecf/procedures—ecf.pdf. The electronic filing of letters, however, is not permitted. *See* Guidelines for Electronic Case Filing, *available at* http://www1.nysd.uscourts.gov/ ecf—guidelines—faq.php; *United States v. Ma*, No. 03 Cr. 734(DAB), 2006 WL 708559, *10 n. 7 (S.D.N.Y. March 21, 2006) (electronically filed letters violate local filing rules and do not get docketed). Consequently, a letter to the Court cannot suffice to make a motion.

While the Court in this case will treat the September 14 letter as a motion, it will not entertain in the future the practice of making motions by letter.

In any event, the absence of any evidence that Peluso represented James and Joseph Pisacano at times relevant to this case is fatal to their motions. *See Stein*, 440 F.Supp.2d at 327.

17. Fiorino Decl. ¶ 2.