**In re JOHN DOE, INC.**

**JOHN DOE, INC. and John Doe, Petitioners–Appellants,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 2195, Docket 93–6175.**

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1993.

Decided Jan. 13, 1994.

Jerry S. McDevitt, Pittsburgh, PA (Laura A. Brevetti, Elan Gerstmann, New York City, of counsel), for petitioners-appellants.

Sean F. O'Shea, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., Peter A. Norling, Asst. U.S. Atty., of counsel), for respondent-appellee.

Before: WINTER, MINER and WALKER, Circuit Judges.

WINTER, Circuit Judge:

This appeal concerns the appropriate procedures by which a district court may determine the existence of the crime-fraud exception to the attorney-client privilege. John Doe, Inc. and John Doe,[1] the CEO and sole shareholder of John Doe, Inc., appeal from Judge Sifton's order compelling John Doe, Inc.'s former attorney ("the attorney") to testify before a grand jury on the ground that the crime-fraud exception applied to appellants' assertion of the attorney-client privilege.[2] Because the procedures employed by

---

1. Because this appeal involves proceedings currently before a grand jury, and the briefs and record on appeal are under seal, we employ pseudonyms to preserve anonymity.

2. At previous stages in this case, the government has disputed that there was an attorney-client relationship between the attorney and John Doe, Inc. The government does not, however, raise this argument on appeal.

the district court provided due process and because the district court articulated a sufficiently high standard of proof for establishing the exception, we affirm.

In April 1993, the attorney received a subpoena ordering him to give testimony before a grand jury. An Assistant United States Attorney ("AUSA") advised the attorney that he would be questioned about the content of communications with CEO John Doe and that the crime-fraud exception to the attorney-client privilege would apply to those communications because the communications involved an attempt by John Doe to suborn perjury. By letter dated May 14, 1993, current counsel for John Doe and John Doe, Inc. informed the AUSA that neither appellant had waived the privilege and requested that the government respect the privilege unless and until it obtained a final compulsion order from the district court, in compliance with the procedures established in *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

In response to appellants' request, on May 18, 1993, the government moved for a compulsion order and submitted to the district court for *in camera* review an *ex parte* sealed affidavit of an FBI agent, which set out the factual basis for the government's invocation of the crime-fraud exception. Appellants objected to this *ex parte* submission and requested that the district court disclose the contents of the affidavit and provide appellants an opportunity to make their own *in camera* submission. In response, Judge Sifton stated, "I did not examine the F.B.I. agent's affidavit until I had satisfied myself that this was a grand jury matter [and] [t]hat the grand jury was pursuing a legitimate investigation and that the questions sought to be asked [of the attorney] were relevant to its inquiry." The district court then concluded on the basis of the affidavit that the threshold showing had been made, and it decided to question the attorney *in camera.* Because of a concern for preserving grand jury secrecy, it denied the requests of the attorney's and appellants' counsel that they be permitted to be present during the examination.

After the *in camera* examination of the attorney, the district court stated for the record that it had briefly met *ex parte* with the prosecutor to determine what questions would be asked of the attorney if compelled to testify before the grand jury. The court also instructed appellants' counsel "not to interrogate [the attorney] about what went on *in camera* unless he asks to talk on the subject with [John Doe] and [John Doe, Inc.'s] counselor and voluntarily discloses these matters." That afternoon, the district court found that the communications at issue were "from an individual seeking to solicit the assistance of the attorney in the commission of a crime," and therefore concluded that the crime-fraud exception had been established. It then granted appellants' application for a stay pending appeal.

On June 18, 1993, appellants moved for a clarification of the standard of proof relied upon by the district court in reaching its conclusion. In an order dated June 30, 1993, the district court responded that a statement of the standard was not required because it had found that the crime-fraud exception had been established "beyond peradventure," and because the conclusion was "not a close question." This appeal followed.

## A. THE PROCEDURES USED BY THE DISTRICT COURT DID NOT VIOLATE DUE PROCESS.

Appellants argue that their due process rights were violated by their exclusion from the *in camera* proceedings. However, taking into account the necessity of preserving the secrecy of the grand jury, we conclude that the district court's procedures did not violate due process.

### 1. *Appellants' Denial of Access to the FBI Affidavit and Inability to Rebut Government Proof Did not Violate Due Process.*

■ Appellants argue that their inability to inspect and rebut with evidentiary submissions the *ex parte* affidavit submitted by the government runs afoul of *Zolin*. The purpose of the attorney-client privilege is to promote open communication between attorneys and their clients so that fully informed

legal advice may be given. The crime-fraud exception strips the privilege from attorney-client communications that "relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1038 (2d Cir.1984). That case established that *in camera* proceedings may be used to determine whether the exception applies to particular communications. Of course, if the attorney were simply called to testify in an open hearing, the privileged communications would be disclosed whether or not the exception applied. *Zolin* held, however, that prior to an *in camera* disclosure of the communications, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person ... that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." 491 U.S. at 572, 109 S.Ct. at 2630 (internal quotations and citation omitted). *Zolin* further established that only non-privileged material may be used to make the threshold determination that triggers *in camera* review. *Id.* at 574, 109 S.Ct. at 2632.

Appellants argue that under *Zolin* they should have been able to examine the *ex parte* affidavit submitted to the court to make the threshold showing. However, nothing in *Zolin* prohibits *ex parte* examination of non-privileged threshold material. The cautionary tone of *Zolin* with respect to the use of *in camera* proceedings concerns the disclosure of the communications for which the privilege is claimed. It does not address the propriety of *ex parte* submissions of non-privileged material.

■ We recognize that an *in camera* submission "deprive[s] one party to a proceeding of a full opportunity to be heard on an issue," and its use is justified only by a compelling interest. *In re John Doe Corp.,* 675 F.2d 482, 490 (2d Cir.1982); *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir.1977). However, in *In re John Doe Corp.,* we held that where an *in camera* submission is the only way to resolve an issue without compromising a legitimate need to preserve the secrecy of the grand jury, it is an appropriate proce-

dure. 675 F.2d at 490. Of course, where concerns for secrecy are weak, an *in camera* proceeding may not be justified. For example, in *Taylor,* we concluded that where a party who sought access to an *in camera* submission would learn the contents of the submission as soon as he was called as a grand jury witness, there was no legitimate concern for secrecy justifying an *in camera* examination. 567 F.2d at 1188. *See also In re Special September 1978 Grand Jury (II),* 640 F.2d 49, 56–57 (7th Cir.1980) (necessity of preserving grand jury secrecy weak where evidence to be revealed is merely government affidavit not containing testimony elicited from grand jury witnesses, disclosure of which will not discourage grand jury witnesses from testifying). Also, the judge may perceive a special need for adversary examination and give full or limited access to the government's submission. Finally, the judge should insure that he or she does not rely on privileged material.

■ In the instant case, we have independently examined the sealed affidavit and are satisfied that disclosure of the affidavit might jeopardize the grand jury investigation. Unlike *Taylor,* it is not at all clear in the instant case that the substance of the *in camera* submission would otherwise be revealed to appellants. Moreover, there is nothing in the affidavit that indicates a special need for adversary examination. Finally, we perceive no danger that the district court relied upon privileged material in making its determination. Therefore, we conclude that the district court properly proceeded to examine the affidavit *in camera.*

Appellants were thus properly denied access to the sealed affidavit, and any resultant limit on their ability to rebut the government's submission was of marginal importance and not violative of due process.

### 2. *The District Court's In Camera Examination of the Attorney Did Not Violate Due Process.*

■ Appellants also argue that their due process rights were violated by their exclusion from the *in camera* examination of the attorney and by their inability to question him after the examination. They argue that

their participation was necessary for the court to make a fair determination of whether the crime-fraud exception had been established and that it is difficult for a judge to be neutral when presented with potentially incriminating evidence without countervailing argument. Due process, however, does not require procedures more extensive than were employed by the district court.

In light of the district court's legitimate concern that the secrecy of the grand jury be preserved, its *in camera* examination of the attorney was the most effective method of determining that the crime-fraud exception had been established. The district court proceeded to an *in camera* review of the allegedly privileged communication only after oral argument and after the threshold showing required by *Zolin* was made. Then, on the basis of information garnered from the affidavit, oral argument, and the *in camera* examination of the attorney, it determined that the crime-fraud exception had been established.

This procedure comports with due process. We have already held that a district court may establish the crime-fraud exception solely on the basis of *in camera* review where there is a legitimate need for secrecy. *In re John Doe Corp.*, 675 F.2d at 490–91. In addition, the Court in *Zolin* held that "*in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." *Zolin*, 491 U.S. at 574, 109 S.Ct. at 2632. Nothing in *Zolin* indicates that, once a threshold showing has been made, any additional safeguards are required.

■ Appellants also object to the district court's instruction that they not interrogate the attorney after the *in camera* examination. However, there was no due process right to interrogate the attorney, who was a potential grand jury witness and no longer represented appellants. Because Judge Sifton briefly met with the prosecutor before examining the attorney to determine the types of questions that might be asked in the grand jury, allowing appellants to discover the contents of the *in camera* communication between the district court and the attorney would have been tantamount to revealing grand jury testimony. Thus, the value of the *in camera* proceeding could be preserved only by the court's instruction. By precluding appellants from interrogating the attorney unless he volunteered the information, the district court properly balanced concerns for secrecy and the ability of grand jury witnesses to testify freely and openly against appellants' interest in asserting the attorney-client privilege.

### B. *THE DISTRICT COURT APPLIED A SUFFICIENTLY HIGH STANDARD OF PROOF.*

Appellants argue that the district court erred in failing to articulate a legally defined standard of proof when ruling that the government had established the crime-fraud exception. They further argue that under *Zolin* the court should have articulated a standard higher than "probable cause," such as "clear and convincing evidence."

■ In this case, we do not need to reach the issue of whether *Zolin* requires a higher standard of proof. Currently, we require that a party seeking to overcome the attorney-client privilege with the crime-fraud exception must show that there is "probable cause to believe that a crime or fraud ha[s] been committed and that the communications were in furtherance thereof." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d at 1039. This standard has been rephrased as requiring "that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.* The district court's statements that it had been established "beyond peradventure that the communications at issue were communications from an individual seeking to solicit the assistance of the attorney in the commission of a crime" and that "[t]his was not a close question," indicate that the court effectively found that there was more than a reasonable basis to suspect that the crime-fraud exception was established.

Furthermore, based upon our own independent examination of the transcript of the *in camera* examination of the attorney, we

are satisfied that even the "clear and convincing" standard proposed by appellants is met. The district court's failure to articulate a standard is thus of no consequence.

We therefore affirm.