In re **RICHARD ROE, INC.,**
and John Doe, Inc.

**United States of America,**
**Petitioner–Appellee,**

v.

**Richard Roe, Inc.; Richard Roe;**
**John Doe, Inc.; and John Doe,**
**Respondents–Appellants.**

Docket No. 95–6142

United States Court of Appeals,
Second Circuit.

Submitted Dec. 12, 1997.

Decided Feb. 3, 1999.

Alan B. Vickery, Assistant United States Attorney for the Eastern District of New York, Brooklyn, New York (Zachary W. Carter, United States Attorney; Peter A. Norling and Lee G. Dunst, Assistant United States Attorneys, of counsel), for Petitioner–Appellee.

Laura A. Brevetti, New York, New York (Robert A. Culp, of counsel), for Respondents–Appellants Richard Roe, Inc. and Richard Roe.

Andrew L. Frey, Mayer, Brown & Platt, New York, New York (Charles Rothfeld, of counsel; David M. Zornow and Lawrence S. Spiegel, Skadden, Arps, Slate, Meagher & Flom, of counsel), for Respondents–Appellants John Doe, Inc. and John Doe.

Before: WINTER, Chief Judge, JACOBS, and CABRANES, Circuit Judges.*

WINTER, Chief Judge:

This appeal from a civil contempt order concerns whether certain documents relating to a major piece of civil litigation fall within the "crime-fraud" exception to attorney-client privilege and attorney work product immunity. This case is before us for a second time, following Chief Judge Sifton's order that 175 otherwise privileged documents be produced by appellants and by ruling that one document was not privileged. He also held that the government could compel the authors and recipients of these documents to testify as witnesses before the grand jury. Because

the documents in question were not "in furtherance of a crime or fraud," we reverse.

The pre–1995 facts concerning this appeal are recounted in our earlier decision, see In re Richard Roe, Inc., 68 F.3d 38, 39 (2d Cir.1995) ("Roe I"), familiarity with which is assumed. In Roe I, we reversed Judge Platt's production order, holding that he applied the incorrect legal test determining whether the crime-fraud exception applied to the documents at issue. Roe I held that "a party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." Id. at 40 (citing In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir.1994)); see also United States v. Jacobs, 117 F.3d 82, 87 (2d Cir.1997). We remanded the case with instructions to

> determine which, if any, of the documents or communications were in furtherance of a crime or fraud.... If production is ordered, the court shall specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered, which of the parties asserting claims of privilege possessed a criminal or fraudulent purpose with respect to those documents or communications, and, if appropriate, whether the crime-fraud exception applies to an innocent joint privilege-holder.

Roe I, 68 F.3d at 41.

Following the remand, Judge Platt recused himself, and the case was reassigned to Chief Judge Sifton. After performing an in camera review of grand jury testimony, the documents, and other material, the court, in an opinion filed under seal, held that 175 of the documents were subject to discovery based upon the crime-fraud exception. The district court found probable cause to believe that violations of the federal mail fraud statute, 18 U.S.C. § 1341, and the federal perjury stat-

---

* On October 13, 1995, a panel of this Court consisting of Judges Winter, Altimari, and McLaughlin remanded this case to the district court pursuant to the procedures set out in United States v. Jacobson, 15 F.3d 19, 22 (2d Cir.1994). Following the district court's ordering the disclosure of documents and the presentation of testimony to the grand jury based upon the crime-fraud exception, jurisdiction was automatically restored to this Court. See In re Richard Roe, Inc., 68 F.3d 38, 41 (2d Cir.1995). However, Judge Altimari passed away on July 19, 1998, and Judge McLaughlin has since recused himself. Judges Jacobs and Cabranes sit in their place.

ute, 18 U.S.C. § 1621, had occurred and that the communications in those documents furthered or concealed the fraud. It also found that Document 195 was not privileged. Finally, it rejected the argument that because Richard Roe, Inc. is an innocent joint privilege-holder, the crime-fraud exception does not apply.

Appellants and the government have filed their briefs on this appeal *ex parte.* Appellants have provided the documents to us for *in camera* inspection. As a result, the government does not know the contents of the documents, and appellants must speculate as to the nature of the government's legal theories regarding the crimes being considered by the grand jury. As a further result, there are three versions of this opinion: the published version available to all; a sealed version available only to the government; and another sealed version available only to the appellants. The various versions indicate where materials included in sealed versions have been redacted.

Appellants contend that the district court erred in its finding that either prong of the crime-fraud exception was satisfied and in holding that the crime-fraud exception can apply to an innocent joint privilege-holder. Because we hold that the district court's conclusion that the documents were in furtherance of a crime or fraud is erroneous, we therefore need not and do not address the other issues raised.

In *Roe I,* we rejected a test for the crime-fraud exception that examined only whether the material sought might provide evidence of a crime or fraud, *i.e.,* a "relevant evidence" test. *See Roe I,* 68 F.3d at 40–41. Instead, we required that there be (i) a determination that "the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud" and (ii) "probable cause to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity." *Id.* at 40 (emphasis added); *see also Jacobs,* 117 F.3d at 88 (" 'To subject the attorney-client communications to disclosure, they must *actually have been made with an intent to further an unlawful act.*' " (quoting *United*

States v. White,* 887 F.2d 267, 271 (D.C.Cir. 1989) (Ruth Bader Ginsburg, J.))).

In that opinion, we also stated that the precise factual basis of the alleged fraud in the instant matter was "unclear." *Roe I,* 68 F.3d at 41. The government has now elucidated its theory for us. Without commenting on its validity, we can say that, insofar as is pertinent to the present proceeding, that theory views the act of defending the lawsuit in question as itself being in furtherance of a fraud.

[REDACTED MATERIAL]

The government's theory would collapse the two-part test for the crime-fraud exception established in *Roe I. See id.* at 40. If (as the government argues) there is probable cause that a fraud has been committed that consists, at least partially, of engaging in litigation, then probable cause would arguably exist to find that every document prepared in connection with the defense of that litigation was in furtherance of the fraud and thus not privileged.

■■ Given that the attorney-client privilege and work product immunity play a critical role in our judicial system, *see United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re John Doe Corp.,* 675 F.2d 482, 492 (2d Cir.1982), the limited exceptions to them, *see, e.g., Jacobs,* 117 F.3d at 87 (crime-fraud exception), 89–91 (waiver), should not be framed so broadly as to vitiate much of the protection they afford. Where the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud. Absent such a showing, the requisite finding that an otherwise privileged or immunized communication was intended to further the fraud cannot be made.

■ For example, one may violate the antitrust laws by bringing baseless litigation intended to delay entry into a market by a competitor. *See Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 895–97 (2d Cir. 1981). If the litigation objectively lacked a factual or legal basis, some communications or work product generated in the course of such litigation might, after a rigorous *in camera* review by a court for relevance, fall within the crime-fraud exception. Thus, a client's directing an attorney to make large numbers of motions solely for purposes of delay would be discoverable. Similarly, where a party suborns perjury by a witness to bolster a claim or defense, Communications or work product relating to that witness might also be discoverable. *See In re John Doe, Inc.*, 13 F.3d at 635, 637–38. We do not probe these issues beyond setting out these examples because the documents sought here clearly do not fall within the crime-fraud exception.

First, the defense of the underlying litigation hardly lacked any legal or factual basis. [REDACTED MATERIAL]

Moreover, our *in camera* examination of the subpoenaed material reveals only the kind of documents that one would typically expect to find generated in the course of a legitimate defense of this particular kind of litigation. No document suggests a belief that the defense of the litigation had no legal or factual support or that the act of litigating was for an improper purpose. The documents do reflect varying degrees of optimism or pessimism over particular issues and the ultimate outcome of the case. The opinions offered, however, are garden variety remarks that one would find in any defense file. None suggests a hopelessness as to the merits of the defense.

Finally, no document indicates an intent to create or present misleading or false evidence. [REDACTED MATERIAL]

The government briefly outlines an alternate theory requiring production. [REDACTED MATERIAL] We therefore reject this argument.

■ We further find that the district court erred in holding Document 195 unprotected by the attorney-client privilege. This document was written by a former attorney for John Doe, Inc., and the information in it reflects knowledge obtained while acting as corporate counsel. This privilege therefore belongs not to the former employee but to the corporation, *see United States v. International Bhd. of Teamsters*, 119 F.3d 210, 215 (2d Cir.1997), and John Doe, Inc. has thus asserted a valid claim to the privilege.

The fact that the author of Document 195 no longer works for John Doe, Inc. is irrelevant. "It follows *a fortiori* that since a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so. An employee must generally keep an employer's confidences." *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir.1996) (citing Restatement (Second) of Agency § 395 (1958)), *cert. denied*, 520 U.S. 1167, 117 S.Ct. 1429, 137 L.Ed.2d 538 (1997). Because Document 195 also does not fall within the crime-fraud exception for the reasons discussed above, appellants need not produce it.

We therefore reverse. Because we hold that all of the documents remain privileged, the order directing the authors and recipients to describe the "circumstances surrounding the creation of the document[s] and the subject matter of the documents" is reversed as well.