In re ENRON CORP., et al., Debtors.

**Enron Broadband Services, L.P., Plaintiff,**

v.

**Travelers Casualty and Surety Company of America, Defendant.**

**Bankruptcy No. 01–16034 (AJG).**
**Adversary No. 02–03459 (AJG).**

United States Bankruptcy Court, S.D. New York.

Aug. 25, 2006.

Therefore, appropriate orders should be entered with respect to those defendants.

Togut, Segal Segal LLP (Albert Togut, Esq., Neil Berger, Esq., Sean McGrath, Esq., of Counsel), New York, NY, for Plaintiff.

Dorsey & Whitney LLP (Christopher G. Karagheuzoff, Esq., Joseph B. Shumofsky, Esq., Deirdre J. Sheridan, Esq., of Counsel), New York, NY, for Defendant.

## OPINION GRANTING DEFENDANT'S MOTION TO COMPEL

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Travelers Casualty and Surety Company of America ("Travelers" or "Defendant") issued a bond to guaranty performance by Global Crossing Bandwidth, Inc., ("Global Crossing") in a transaction between Enron Broadband Services, L.P. ("EBS" or "Plaintiff") and Global Crossing. EBS initiated the instant adversary proceeding against Travelers to compel payment on the bond.

This matter is presently before the Court for the resolution of a discovery

dispute. During the depositions of two former EBS employees, David Thames and Brian Spector, EBS asserted its attorney-client privilege to prevent disclosure of communications between these two former employees and in-house counsel regarding the bond and its underlying transaction. Travelers filed a motion to compel disclosure of these communications. This Court holds that the communications at issue are not protected from disclosure by the attorney-client privilege because the crime-fraud exception applies. Travelers's motion is therefore granted as to evidence of communications between EBS's former employees and in-house counsel regarding the bond and its underlying transaction.

The Court holds not only that David Thames's and Brian Spector's deposition testimonies about their communications with in-house counsel regarding the bond and its underlying transaction are not privileged, but also that evidence of communications between EBS's former employees and in-house counsel regarding the bond and its underlying transaction is not privileged. In case of further disputes regarding the privileged status of additional discrete items of evidence, the Court remains available for *in camera* review to determine whether those items fall within the ambit of the crime-fraud exception and the present opinion.

## JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334 and 157(b) of title 28 of the United States Code, under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), and under paragraph 60 of this Court's Order Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors under chapter 11 of title 11 of the United States Code (July 15, 2004). The Court has jurisdiction over "core proceedings" including "matters concerning the administration of the estate" and "orders to turn over property of the estate." 28 U.S.C. § 157(b)(2)(A), (E) (2000). Venue is properly before this Court pursuant to section 1409(a) of title 28 of the United States Code.

## FACTS AND PROCEDURAL BACKGROUND

On March 28, 2001, EBS and Global Crossing entered into the Capacity Service Agreement ("CSA"). (*See* Declaration of Christopher G. Karagheuzoff in Support of Travelers Casualty and Surety Company of America's Motion to Compel ("Karagheuzoff Decl.") Ex. A.) According to the CSA, Global Crossing was to provide broadband capacity to EBS and EBS to prepay the entire contract price in the amount of $17,745,000. Global Crossing also had to furnish a surety bond or other collateral for the full amount of the prepayment, for the benefit of EBS, in the event that Global Crossing failed to perform under the CSA.

Accordingly, also on March 28, 2001, Travelers issued a bond to Global Crossing in favor of EBS. (*See* Karagheuzoff Decl. Ex. C.) The bond was issued for a one-year term and would extend automatically for additional one-year terms unless terminated by Travelers. In October 2001, Travelers delivered a termination notice to EBS. (*See* Karagheuzoff Decl. Ex. D.) According to EBS, Global Crossing did not obtain another bond. (Compl. ¶ 22.)

EBS filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York on December 24, 2001. Global Crossing filed for bankruptcy in the United States Bankruptcy Court

for the Southern District of New York on January 28, 2002.

On February 27, 2002, EBS demanded in writing that Travelers pay on the bond. (*See* Karagheuzoff Decl. Ex. E.) Travelers did not pay and submitted informal requests for information to EBS and Global Crossing regarding the transaction underlying the bond. (*See* Karagheuzoff Decl. Ex. F.) On November 8, 2002, EBS commenced the instant adversary proceeding against Travelers to compel payment on the bond pursuant to section 542 of title 11 of the United States Code (the "Bankruptcy Code") and state contract law.

On January 13, 2003, EBS filed a motion for summary judgment. In response, Travelers alleged that, unbeknownst to Travelers, on March 28, 2001, the same day that the CSA was entered into and the bond issued, EBS sold bandwidth capacity to Global Crossing through Reliant Energy Services, Inc. ("Reliant"). (*See* Karagheuzoff Decl. Ex. B.) According to Travelers, the combination of this sale and the CSA constituted a loan. Travelers noted that applicable New York law contains the "Appleton Rule" (Travelers Casualty and Surety Company of America's Memorandum of Law in Support of its Motion to Compel ("Travelers Mem.") 1 n. 6.), which prohibits surety companies like Travelers to issue a bond guarantying a loan transaction. *See* N.Y. Ins. Law § 1113(a)(16)(E)(ii) (McKinney 2000). Travelers asserted that it was fraudulently induced to issue a bond in connection with a loan.

This Court denied EBS's motion for summary judgment because of its concerns with, *inter alia*, the following issues of material fact: (1) whether the substance of the [a]greement underlying the ... [bond] is [a] *bona fide* broadband capacity service agreement and not a disguised loan or other type of transaction or, in the alternative, a component of other transactions not disclosed to the Defendant; and (2) whether the [p]repayment was a *bona fide* payment made pursuant to a *bona fide* [a]greement.

Order Denying Plaintiff's Motion for Summary Judgment 4.

During the ensuing discovery, a number of depositions took place. EBS asserted its attorney-client privilege during the deposition of David Thames, former Manager of Finance at EBS, on November 11, 2005 and also during the deposition of Brian Spector, a former Director at EBS, on December 2, 2005. (*See* Karagheuzoff Decl. Ex. J–M.) In both instances, EBS contended that the privilege shielded from disclosure the deponent's communications with EBS's former General Counsel, Kristina Mordaunt, and another in-house attorney, Cynthia Harkness.

Travelers asserts that EBS would have also invoked the attorney-client privilege during the deposition of Evan Betzer, a former Associate at EBS, on December 3, 2005, if Travelers had had the opportunity to ask about the communications at issue. (*See* Karagheuzoff Decl. Ex. H.) Travelers claims that Evan Betzer and his attorney left before the deposition was finished. (Travelers Mem. 1 n. 1.)

On March 31, 2006, Travelers filed a motion to compel requesting that this Court

(1) overrule EBS's objection, based on the attorney-client privilege, to the disclosure of communications between EBS's former employees and members of EBS's in-house legal department regarding (a) the CSA, (b) the simultaneous sale of bandwidth capacity by EBS to Global Crossing through Reliant, and (c) the bond, dated March 28, 2001;

(2) permit discovery regarding such communications in future depositions of former EBS employees; and

(3) reopen the depositions of EBS employees whose depositions have already occurred, including David Thames, Brian Spector, and Evan Betzer [1]

(4) if the Court sustains EBS's objection, issue an order "prohibiting EBS from arguing that it understood the transaction underlying the [bond] and/or the [bond] to be legal, inasmuch as permitting EBS to do so while at the same time prohibiting Travelers from testing the bases of such understanding would be inequitable." (Travelers Mem. 1.)

On April 21, 2006, EBS filed Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Compel ("EBS Mem."), accompanied by the Declaration of Sean P. McGrath in Opposition to Travelers Casualty & Surety Company of America's Motion to Compel ("McGrath Decl."). On May 1, 2006, Travelers filed its Reply Memorandum in Further Support of Travelers Casualty and Surety Company of America's Motion to Compel ("Travelers Reply Mem."), along with the Reply Declaration of Christopher G. Karagheuzoff in Further Support of Travelers Casualty and Surety Company of America's Motion to Compel ("Karagheuzoff Reply Decl."). A hearing was held regarding Travelers's motion to compel on May 4, 2006.

### DISCUSSION

*Parties' Contentions*

**Timeliness**

█ EBS argues that Travelers's motion to compel is untimely. EBS cites to several cases to support its argument. *See Cramer v. Fedco Auto. Components Co.,* No. 01–CV–0757, 2004 WL 1574691 (W.D.N.Y. May 26, 2004); *Pitter v. Am. Express Co.,* No. 82 Civ. 7451, 1984 WL 1272 (S.D.N.Y. Nov.27, 1984); *Wells v. Sears Roebuck & Co.,* 203 F.R.D. 240 (S.D.Miss.2001). EBS also lists several factors the Court should take into consideration

Factors that courts have considered in determining whether a motion to compel is timely include: (1) the length of delay in bringing the motion; (2) whether such delay is likely to cause prejudice or impose an undue hardship on other parties to the case; (3) whether the delay was caused by matters about which the moving party was "justifiably ignorant" or over which the moving party had no control; (4) "[w]hether the delay was tactically inspired, the product of negligence, or was occasioned by good faith efforts to secure the information through negotiations, other discovery tools, or from other sources" and (5) whether permitting the motion to compel would interfere with pretrial scheduling.

(EBS Mem. 7) (quoting 7 James Wm. Moore et al., *Moore's Federal Practice–Civil,* § 37.05[2] (Lexis 2006)).

EBS then proceeds to examine each factor in the context of the instant matter. First, EBS points out that Travelers did not move to compel for more than four months after EBS invoked the attorney-client privilege during the Thames deposition on November 11, 2005.

Second, EBS notes that the deadline for conclusion of non-expert depositions was April 15, 2006 and accordingly argues that granting the motion "will require the

---

1. Evan Betzer's deposition does not need to be reopened; it would continue from the point where it was interrupted. (Travelers Mem. 1 n. 1.)

Court to extend that deadline and will thus delay EBS'[s] ability to prosecute its claims, resulting in prejudice to EBS." (EBS Mem. 7–8) (citing *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D.Nev. 1999)). Additionally, EBS argues that the law disfavors additional depositions of witnesses, particularly non-party witnesses, who have already been deposed. (EBS Mem. 8) (citing *Carter v. Cornell Univ.*, 173 F.R.D. 92, 93 (S.D.N.Y.1997); *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F.Supp. 693, 732–733 (S.D.N.Y.1996); 7 James Wm. Moore et al., *Moore's Federal Practice–Civil*, § 30.05[1][c] (Lexis 2006)). According to EBS, deposing David Thames and Brian Spector again would cause them prejudice that outweighs any benefit to Travelers.

Third, EBS emphasizes that Travelers was not "justifiably ignorant" of the basis for a motion to compel. On the contrary, EBS says, Travelers knew of the basis already by the date of the Thames deposition

Fourth, since the November 23, 2005, and December 1, 2005, letters, "the parties have had no substantive discussion regarding the issues raised by Travelers'[s] Motion other than colloquy occurring on the record during the Spector Deposition." (EBS Mem. 9.) EBS argues that, therefore, the Court should find that Travelers's delay was tactical.

Fifth, EBS reproaches Travelers with delaying the deposition of Cynthia Harkness and thus interfering with the discovery schedule.

In response, Travelers asserts that it was EBS in the first place who failed to prosecute its action diligently. (*See* Karagheuzoff Reply Decl. Ex. D, E, and F.) Travelers contends it waited over a year for EBS to produce its Rule 30(b)(6) witness.

Travelers refers to a historically cooperative counsel relationship in the instant adversary proceeding, including agreements to extend scheduling order deadlines. Extending those deadlines was necessary, Travelers explains, because EBS failed to prosecute its action diligently and because witnesses formerly employed at EBS or Global Crossing have been difficult to locate and many do not wish to testify. Travelers claims and EBS does not dispute that "[c]onsistent with past practice, the parties have mutually agreed to a further extension of the April 15 fact discovery deadline in this case." (Travelers Reply Mem. 11.)

Travelers points out that the Federal Rules of Civil Procedure do not prescribe any deadline for filing motions to compel and that this Court has not determined a date by which motions to compel must be filed. Moreover, "Travelers'[s] Motion to Compel was served well in advance of the then-scheduled April 15, 2006 date by which fact witness depositions were to conclude, the August 19, 2006 date by which all discovery in this case had been scheduled to close, and the September 14, 2006 date by which dispositive motions were due." (Travelers Reply Mem. 11.) Travelers concludes that there is no delay.

Travelers considers cases cited by EBS inapposite because "courts in those cases deemed the discovery motions at issue untimely largely or entirely because they were made *on or after* the date by which discovery was scheduled to close *and* long after the basis for making such motion became apparent." (Travelers Reply Mem. 12) (citing *Cramer*, 2004 WL 1574691, at *1–3; *Pitter*, 1984 WL 1272, at *5; *Wells*, 203 F.R.D. at 241).

As to the prejudice factor, Travelers contends that EBS suffers no harm because the motion to compel was not made on the eve of trial, but well before the end

of the fact discovery period. Further, Travelers argues that counsel for EBS has no standing to claim that the motion prejudices Messrs. Thames and Spector. According to Travelers, it is up to their own counsel to say that their clients are prejudiced, and they have not voiced any objections, although they were served with the motion to compel.

As for Evan Betzer's and Cynthia Harkness's depositions, Travelers says there is no prejudice because the former's deposition is not finished and the latter's deposition has not taken place yet.

Finally, Travelers argues that the cases cited by EBS for the proposition that additional depositions of witnesses already deposed are disfavored are distinguishable from the present situation because of different facts. (Travelers Reply Mem. 14 n. 11.)

**Attorney–Client Privilege**

a) Travelers's Contentions

Travelers contends that EBS is improperly asserting the attorney-client privilege to avoid disclosures of communications between EBS employees and in-house counsel regarding the bond and its underlying transaction. Travelers argues that EBS has not met the burden of showing that the privilege covers these communications. Additionally, according to Travelers, EBS's objection to disclosure on privilege grounds fails because EBS's in-house counsel acted as a business advisor, the crime-fraud exception to the privilege applies, and EBS waived the privilege.

First, Travelers reproaches EBS with asserting the privilege regardless of the distinction between legal and business advice. Travelers notes that communications with in-house counsel are not privileged if they pertain to business advice. *See Reino de Espana v. Am. Bureau of Shipping*, No. 03 Civ. 3573, 2005 WL 3455782, at *2;

*Hardy v. New York News, Inc.*, 114 F.R.D. 633, 643–644 (S.D.N.Y.1987). Travelers points out that in-house counsel was part of a team working on the transaction at issue and that other members of the team did not even see in-house counsel as in charge of rendering legal advice to the team. Travelers contends that outside counsel was in charge of providing legal advice.

As additional proof that in-house counsel provided business advice, Travelers points to EBS's admission in its memorandum of law that the documents produced by EBS are not privileged.

Second, Travelers claims, "[e]ven if in-house counsel had served in some legal capacity on the Bandwidth Team [people who worked on the transaction underlying the bond], EBS's attorney-client privilege would not apply because communications made in furtherance of the underlying transactions—the CSA, the EBS Sale [the sale executed on the same day as the CSA], and the [bond]—were in furtherance of, or in contemplation of, the EBS misconduct that lies at the heart of this lawsuit." (Travelers Mem. 17.)

Travelers asserts that its submissions opposing EBS's motion for summary judgment provide sufficient evidence for allegations of fraud. Travelers contends that although EBS admitted knowing about the Appleton Rule, the documents EBS produced show that EBS treated the bonded transaction as a loan. "Indeed, it is clear that EBS regarded the [bond] as nothing more than security for a loan obligation (rather than a performance obligation), inasmuch as it continued to receive from Global Crossing the bandwidth that EBS was obliged to deliver under the terms of the CSA *after EBS made its demand on the bond*. (*See* Zimmerman Deposition at 101:17–102:4, Dec. 13, 2005, Karagheuzoff Decl. Ex. I.)" (Travelers Mem. 18.)

Further, Travelers argues that "EBS cannot . . . avoid the crime-fraud exception by claiming that Travelers was not defrauded. It is sufficient that, at the time of the transaction at issue, EBS knowingly acted in furtherance of an unlawful goal." (Travelers Reply Mem. 9–10.) (citing *Marc Rich & Co. v. United States (In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983)*, 731 F.2d 1032, 1041 (2d Cir.1984)).

Travelers concludes that the crime-fraud exception to the attorney-client privilege applies because there is *prima facie* evidence of wrongdoing and the communications at issue relate to this wrongdoing. Travelers asks for at least an *in camera* review of documents evidencing communications at issue to determine if the privilege applies.

Third, "[i]n this case, EBS has waived any claim of privilege with respect to communications with in-house counsel regarding the relevant transactions because it has already produced e-mails and other documents memorializing communications with EBS's in-house counsel regarding the same transactions at issue in this case." (Travelers Mem. 19–20) (footnote 16 citing Karagheuzoff Decl. Ex. O, Q).

Further, Travelers points to investigations by Congress, the Securities and Exchange Commission, the United States Attorney, the Examiner appointed by this Court, and the Creditors' Committee. Travelers contends that EBS has the burden to show that the privilege was not waived as a result of these investigations.

Finally, Travelers argues that EBS has put its good faith and motive at issue. According to Travelers, EBS's action to collect on the bond means that EBS believes the bond and the underlying transaction to be legal. Travelers concludes that EBS has waived the privilege as to communications with in-house counsel regarding the legality of the transaction.

### b) EBS's Contentions

EBS responds that it seeks to protect exactly what the attorney-client privilege covers. EBS believes that under applicable law "there is more than sufficient evidence on the record of the depositions to show that the content of the communications was protected by the attorney/client privilege." (Tr. 29.)

Moreover, EBS argues that the crime-fraud exception does not apply. First, EBS asserts that there is no probable cause. EBS says that this Court never evaluated evidence, as it only denied EBS's motion for summary judgment. Further, EBS contends that Travelers's "good faith basis for its allegations of fraud" (Travelers Mem. 17) is not enough to reach the level of probable cause.

According to EBS, Travelers has not even alleged the elements of fraud. EBS also asserts that "[e]vidence produced by Travelers indicates that it knew of the facts—which it contends were concealed—months before the transaction was consummated." (EBS Mem. 17.) (footnote 8 citing to Osburn Dep., Nov. 16, 2005, McGrath Decl. Ex. G–H.).

Second, EBS argues that no evidence submitted by Travelers satisfies the second prong of the applicable test, which requires that communications at issue be secured in furtherance of the crime or fraud.

Finally, EBS denies any waiver of the privilege. EBS starts by noting that the law is not clear on which side has the burden to prove waiver. EBS also claims that the documents produced by EBS are not privileged, so their production does not mean waiver. As to the issue of implied waiver, EBS contends that it has only

denied fraud without claiming good-faith belief that its actions were legal. Therefore, EBS says, there is no implied waiver.

### The Court's Determination

Travelers's motion to compel is timely. The Court holds that communications between EBS's in-house counsel and former employees regarding the bond and the underlying transaction are not privileged because the crime-fraud exception applies. Thus, the Court need not decide whether the communications constitute business advice not covered by the privilege or whether EBS explicitly or impliedly waived the privilege. The Court grants the motion to compel and also grants leave for additional depositions of witnesses who may be able to testify as to communications between the deponents and in-house counsel at EBS regarding the bond and the underlying transaction, whether the witnesses were already deposed or not. If necessary, the Court is available to examine additional evidence *in camera* to make itemized determination as to the application of the privilege.

### Timeliness

As in *Gault*, "[t]he Federal Rules of Civil Procedure and the Local Rules of this district do not specify a time limit for filing a motion to compel. Therefore, the court is called upon to establish a reasonable time for a party to bring a motion to compel." 184 F.R.D. at 622; *see also United States ex rel. Purcell v. MWI Corp.*, 232 F.R.D. 14, 17 (D.D.C.2005) ("[T]he court has discretion to determine, in the absence of a deadline fixed by an order of the court, whether a motion to compel is untimely.")

EBS correctly identifies the factors that this Court should examine to decide whether the motion to compel should be denied as untimely. *See* 7 James Wm. Moore et al., *Moore's Federal Practice–Civil*, § 37.05[2] (Lexis 2006). However, the Court doubts that there is any delay at all.

"A motion to compel filed during the discovery period would rarely be considered untimely." *Gault*, 184 F.R.D. at 622. Travelers filed its motion to compel on March 31, 2006, two weeks before the then-in-effect deadline for all depositions of potential witnesses other than experts. (*See* Amended Scheduling Order (Feb. 15, 2006) ¶ 1.) At the time of the motion, the latest deadlines for other discovery tools were in the summer of 2006. (*Id.* ¶ 3–4.) Dispositive motions had to be filed by September 14, 2006. (*Id.* ¶ 5.) Thus, this Court finds that Travelers's motion to compel is not in contravention of any discovery deadline and that, therefore, there is a strong presumption in favor of deeming it timely.

In *Purcell*, the United States District Court for the District of Columbia examined four cases, including *Gault*, in which the court found that the motion to compel had been untimely filed, and came to the conclusion that "while each judge who found that a motion to compel was untimely filed considered that deadline for the close of discovery had passed when the motion to compel was filed, the common dispositive factor was that any order requiring further discovery would have disturbed either the consideration of a dispositive motion or the conduct of the trial." 232 F.R.D. at 17. Evan assuming Travelers's motion was in violation of a discovery deadline, further discovery in the instant matter would not impair consideration of a dispositive motion or the conduct of trial. Indeed, there is no outstanding dispositive motion at this time and no trial is imminent.

Cases cited by EBS are not directly on point. *Wells* does not provide sufficiently detailed guidance as to why the court denied the motion to compel. 203 F.R.D. at

241 ("This length of delay [5 months] is not acceptable."). In *Cramer*, the court found that a second request for production of documents "would serve as a vehicle to circumvent the court-imposed discovery deadline without any reasonable justification." 2004 WL 1574691, at *3. Here, there is no issue of Travelers attempting to circumvent a deadline. In *Pitter*, the motion to compel was deemed untimely because the moving party did not file the motion to compel until the final pre-trial conference. 1984 WL 1272, at *5. In *Gault*, the motion to compel was filed after the applicable discovery deadline and on the eve of trial. 184 F.R.D. at 622. In the instant matter, no deadline has been violated and, when the motion to compel was filed, the proceedings were not close to the trial date.

Therefore, Travelers's motion to compel is timely.

### Attorney–Client Privilege

a) Generally

■ Initially, the Court must determine whether federal or state law governs the privilege. EBS is suing Travelers both under federal law (section 542 of the Bankruptcy Code) and state law (breach of contract). (Compl.¶¶ 30–39.) In this situation, federal law, rather than state law, governs the issue of privilege. *Nikkal Indus. v. Salton, Inc.*, 689 F.Supp. 187, 191 (S.D.N.Y.1988) (citing *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987)). Therefore, the Court will turn to federal law to decide whether the privilege applies.

■ The general requirements and the purpose of the attorney-client privilege are well established. "The attorney-client privilege forbids an attorney from disclosing confidential communications that pass in the course of professional employment from client to lawyer. 'The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which protection is claimed, all must be established in order for the privilege to attach.'" *Carter*, 173 F.R.D. at 94 (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)). "The privilege is intended to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice." *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995)).

■ EBS, as a corporate entity, may also benefit from the privilege as "[t]he Supreme Court has held that the attorney-client privilege attaches to corporations as well as to individuals. Communications made between an attorney and a corporate client's employees are privileged so long as they are made to attorneys (or their representatives) for the purpose of securing legal advice and concern matters within the scope of the employees' corporate duties." *Id.*, 173 F.R.D. at 95 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *Upjohn*, 449 U.S. at 389–90, 394–95, 101 S.Ct. 677). EBS, however, as "a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof." *von Bulow* 811 F.2d at 146 (citing *In re Horowitz*, 482 F.2d 72 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973)); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01 Civ. 8854, 2006 WL 1004472, at *2–3, 2006 U.S. Dist. LEXIS 20648, at *7–8 (S.D.N.Y. Apr. 18, 2006).

EBS asserts that the deposition record is sufficient to justify application of the privilege. Travelers responds that EBS cannot protect business advice from disclosure, that the crime-fraud exception applies, and that EBS waived the privilege by putting the advice of counsel at issue. Whether EBS has met its burden or not, the Court holds that the communications at issue are not protected by the attorney-client privilege because the crime-fraud exception applies. Therefore, the Court need not decide whether the communications at issue pertain to business advice or whether privilege was waived.

b) Crime–Fraud Exception

"The crime-fraud exception strips the privilege from attorney-client communications that 'relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.'" *John Doe, Inc. v. United States (In re John Doe, Inc.)*, 13 F.3d 633, 636 (2d Cir.1994) (quoting *Marc Rich & Co. v. United States (In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983)*, 731 F.2d 1032, 1038 (2d Cir.1984)). Two conditions must be met for the crime-fraud exception to apply. First, "there must be a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud and, second, the communications must be in furtherance thereof." *Ivers v. Keene Corp. (In re Bairnco Corp. Sec. Litig.)*, 148 F.R.D. 91, 100 (S.D.N.Y. 1993) (citing *Marc Rich & Co.*, 731 F.2d at 1039; *In re Int'l Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)); *see also Horwitz v. Sheldon (In re Donald Sheldon & Co.)*, 191 B.R. 39, 49 (Bankr.S.D.N.Y.1996) (citing *United States v. Richard Roe, Inc. (In re Richard Roe, Inc.)*, 68 F.3d 38 (2d Cir.1995)).

"The first condition may be met by showing that the client was engaged in planning a fraudulent scheme when seeking advice from counsel, or attempted fraud after receiving the benefit of counsel's work .... (all that is required is that the likelihood of violation be sufficient as a *prima facie* matter). The second condition may be met by finding that the communications reasonably relate to the subject matter of the possible violations." *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. at 100 (citing *In re Sealed Case*, 676 F.2d 793, 814–816, 815 n. 92 (D.C.Cir.1982); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 53–54 (S.D.N.Y.1989)).

As to the first condition, the Court notes that whether EBS's conduct legally constituted a crime is irrelevant if the conduct amounted to fraud. *Marc Rich & Co.*, 731 F.2d at 1039 ("If the advice was sought in furtherance of a fraud that is not necessarily a violation of the criminal code, the communication is nonetheless unprivileged."). Fraud can be defined as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *Black's Law Dictionary* 670 (7th ed.1999).

Travelers has submitted enough evidence to provide a "reasonable basis to suspect the perpetration ... of a ... fraud" and to establish *prima facie* that, at the time of the communications at issue, EBS "was engaged in planning a fraudulent scheme when seeking advice from counsel." *See* 148 F.R.D. at 100.

First, Travelers's submissions confirm suspicions that EBS knew that the underlying transaction was a loan and not a capacity service agreement. The CSA, the sale executed on the same day as the CSA, and the bond (*see* Karagheuzoff Decl. Ex. A–C) appear to be the components of a transaction similar to the "Mahonia transaction" at issue in *JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F.Supp.2d

24 (S.D.N.Y.2002) and described in detail in the Second Interim Report of the Examiner appointed by this Court. (*See* Second Interim Report of Neal Batson, Court–Appointed Examiner. App. E.) At the very least, the CSA by itself appears suspicious as it makes little business sense. (*See* Decl. of Paul J. Frankel in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Req. for Disc. Pursuant to Bankruptcy Rule 7056.) EBS understood the structure of the transaction at issue in the instant proceeding and therefore understood that the transaction was a loan and not a capacity service agreement. (*See* Karagheuzoff Decl. Ex. O–Q.)

Travelers's submissions also show that EBS knew about the Appleton Rule prohibiting Travelers from issuing a bond to guaranty payment of a loan (*See* Thames Dep. 112:10–18, Nov. 11, 2005, McGrath Decl. Ex. A.), and that, despite such knowledge, EBS did not reveal the true nature of the underlying transaction to Travelers. (Aff. of Philip N. Bair ¶ 9.) Travelers did not know about the true nature of the transaction at issue. (*See* Wicks Dep., 31:17–32:11, 87:24–90:17, 93:3–94:17, Feb. 27, 2006, Karagheuzoff Reply Decl. Ex. B; Osburn Dep. 164:13–24, Karagheuzoff Reply Decl. Ex. C.) The evidence that EBS offers to the contrary (Osburn Dep., 165–174, McGrath Decl. Ex. G–H.) is inconclusive at best.

Thus, Travelers has established fraud *prima facie* and satisfied the first condition of the crime-fraud exception.

▮▮▮▮ As to the second condition, "[t]he communication with counsel need only reasonably relate to the subject matter of the violation." *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. at 101 (citing *In re Sealed Case*, 676 F.2d at 815). The Court also notes that "[t]he intent, knowledge or culpability of counsel is not the dispositive factor." *Id.* (citing *Marc Rich & Co.*, 731

F.2d at 1038; *Duttle*, 127 F.R.D. at 53; *In re Sealed Case*, 676 F.2d at 815).

David Thames had conversations with in-house counsel regarding the Appleton Rule and the transaction at issue. (Thames Dep. 46:15–24, 112:10–18, McGrath Decl. Ex. A.) As for Brian Spector, he did have communications with in-house counsel about the transaction at issue. (Spector Dep. 149:13–20, Dec. 2, 2005, Karagheuzoff Decl. Ex. M.) Therefore, David Thames's and Brian Spector's communications with in-house counsel at EBS regarding the transaction at issue are not privileged.

In sum, the Court holds that communications between EBS's former employees and members of EBS's in-house legal department regarding the CSA, the same-day sale of bandwidth capacity by EBS to Global Crossing through Reliant, and the bond dated March 28, 2001, are not privileged because the crime-fraud exception applies. In case of future discovery disputes, the Court may decide to use *in camera* proceedings to assess the applicability of the privilege and the crime-fraud exception. *John Doe, Inc.*, 13 F.3d at 636–37.

**Leave for Additional Depositions**

▮▮▮▮ Leave of court must be obtained "if, without the written stipulation of the parties, ... the person to be examined already has been deposed in the case." Fed.R.Civ.P. 30(a)(2)(B). "The decision to permit a second deposition is left to the discretion of the trial court, and the court should balance the burdens of the various parties in exercising this discretion." 7 James Wm. Moore et al., *Moore's Federal Practice–Civil*, § 30.05[1][c] (Lexis 2006) (citing *Tri–Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 101–102 (S.D.N.Y. 1997)). More precisely, "[t]he decision to grant or deny leave to re-depose a witness

is guided by Rule 26(b)(2), which requires the party opposing the second deposition to demonstrate that: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." 7 James Wm. Moore et al., *Moore's Federal Practice–Civil,* § 30.05[1][c] (Lexis 2006); *see also Export–Import Bank of the United States v. Asia Pulp & Paper Co.,* 232 F.R.D. 103, 112 (S.D.N.Y.2005).

Evan Betzer's deposition, which was not completed, and all depositions that have not occurred yet do not require leave of court. Only persons who have already been fully deposed are concerned here, including David Thames and Brian Spector.

In the instant situation, second depositions would not be "unreasonably cumulative or duplicative" because assertion of the privilege by EBS prevented any inquiry into the communications at issue between the deponents and in-house counsel. Travelers has not had any "ample opportunity to obtain the information sought" for the same reason. EBS has not offered another source for this information that is "more convenient, less burdensome, or less expensive."

Disclosure of communications between the deponents and in-house counsel would materially help this Court in assessing the validity of Travelers's defense that EBS procured the bond fraudulently. If Travelers's defense is valid, EBS will not collect millions of dollars on the bond. Thus, despite difficulties in locating deponents and securing their cooperation, the likely benefit of additional depositions outweighs their burden and expense.

*Bonnie,* cited by EBS, is inapposite. The court in that case denied leave for a second deposition because the person already deposed was a non-party witness and the party seeking an additional deposition intended "simply to rehash old testimony." 945 F.Supp. at 733. In the present matter, David Thames, Brian Spector, and other potential deponents are non-party witnesses, but the additional depositions are aimed at eliciting material information that was blocked from disclosure by an unwarranted assertion of the attorney-client privilege. *Carter* is of no help to EBS either as, in that case, the court denied leave for a second deposition because it found that the attorney-client privilege had been justifiably invoked. 173 F.R.D. at 93.

Therefore, the Court grants Travelers's request for additional depositions of witnesses already deposed in order to elicit testimony as to communications between the deponents and in-house counsel at EBS regarding the bond and the underlying transaction.

## CONCLUSION

The Court holds that communications between EBS's former employees, including David Thames and Brian Spector, and members of EBS's in-house legal department regarding the CSA, the same-day sale of bandwidth capacity by EBS to Global Crossing through Reliant, and the bond dated March 28, 2001, are not privileged. If need be, the Court remains available for *in camera* proceedings to assess the applicability of the privilege regarding additional specific items of evidence.

Travelers's motion to compel is granted. Travelers shall settle an order consistent with this opinion.