138 Nev., Advance Opinion 73

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROWEN A. SEIBEL; MOTI PARTNERS, LLC; MOTI PARTNERS 16, LLC; LLTQ ENTERPRISES, LLC; LLTQ ENTERPRISES 16, LLC; TPOV ENTERPRISES, LLC; TPOV 16 ENTERPRISES, LLC; FERG, LLC; FERG 16, LLC; R SQUARED GLOBAL SOLUTIONS, LLC; DNT ACQUISITION, LLC; GR BURGR, LLC; AND CRAIG GREEN, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE TIMOTHY C. WILLIAMS, DISTRICT JUDGE, Respondents, and DESERT PALACE, INC.; PARIS LAS VEGAS OPERATING COMPANY, LLC; PHWLV, LLC; AND BOARDWALK REGENCY CORPORATION, Real Parties in Interest. | No. 83723 FILED NOV 23 2022 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Petition for extraordinary writ relief challenging a district court order compelling the disclosure of privileged documents under the crime-fraud exception to the attorney-client privilege.

*Petition denied.*

Bailey Kennedy and Joshua P. Gilmore, John R. Bailey, Dennis L. Kennedy, and Paul C. Williams, Las Vegas,
for Petitioners.

Pisanelli Bice PLLC and Jordan T. Smith, James J. Pisanelli, Debra L. Spinelli, and M. Magali Mercera, Las Vegas,
for Real Parties in Interest.

---

BEFORE THE SUPREME COURT, HARDESTY, STIGLICH, and HERNDON, JJ.

## OPINION

By the Court, HARDESTY, J.:

We elect to hear this petition to address a matter of first impression before this court regarding the procedures and burden of proof required to establish the crime-fraud exception to the attorney-client privilege. Because the district court did not err in ordering an in camera review of the privileged communications at issue here, and because it did not abuse its discretion in ultimately ordering the disclosure of those communications, we deny this petition for extraordinary relief.

### FACTS AND PROCEDURAL HISTORY

Petitioner Rowen Seibel, through his limited liability companies, entered into development agreements with Caesars to operate restaurants for various Caesars properties.[1] When Caesars discovered that

---

[1]Petitioners Seibel, his affiliated entities, and Craig Green are collectively referred to as "Seibel" in this opinion. Real parties in interest are four properties operated by Caesars Entertainment, Inc., and are collectively referred to as "Caesars" in this opinion.

Seibel had been convicted of tax fraud, it terminated the agreements, citing a term that appeared in all the parties' contracts that allowed Caesars to terminate if its relationship with Seibel could jeopardize Caesars' gaming licenses. Seibel sued one of the Caesars properties, Planet Hollywood in Las Vegas, for breach of contract and related claims. Seibel claimed that he had cured any potential risk by creating an irrevocable family trust and assigning his contractual rights and interests under the development agreements to newly formed business entities owned and managed by independent trustees. He asserted that he was neither a trustee nor a beneficiary of the trust and was no longer affiliated with the business entities that were assigned the development agreements. Planet Hollywood counterclaimed that Seibel had fraudulently attempted to hide his unsuitability to conduct business with a gaming licensee, causing it damages. Other Caesars properties later sued Seibel, seeking declaratory relief and damages, and these actions were consolidated.

During litigation, Caesars obtained through discovery a copy of a prenuptial agreement between Seibel and his wife, which had been executed contemporaneously to Seibel's trust and allowed Seibel to benefit from the trust. Caesars concluded that Seibel had used legal counsel to create both the trust and the prenuptial agreement so that he could secretly retain the benefits of the development agreements while tricking Caesars into thinking that he had dissociated from them. On this suspicion, Caesars moved to compel discovery of over 100 documents from Seibel's attorney-client privilege log under Nevada's crime-fraud exception. The district court granted this motion in two orders. The first granted in camera review of the documents after determining that Caesars had met its burden of showing that Seibel was engaged in an attempt to deceive Caesars when he

SUPREME COURT
OF
NEVADA

(O) 1947A

3

sought the advice of legal counsel for the creation of his trust and prenuptial agreement. The second order granted the motion to compel disclosure of all the documents after finding, through in camera review, that the documents were sufficiently related to and made in furtherance of Seibel's attempted fraudulent scheme.

Seibel petitions this court for a writ of prohibition or mandamus preventing the district court from compelling disclosure of the documents and ordering the district court to find the documents undiscoverable. Seibel argues primarily that the district court erred in finding that Caesars had met its initial burden of demonstrating that Seibel was engaged in a fraudulent scheme when he sought legal advice regarding his trust and prenuptial agreement, and that the district court erred in further concluding that all of Seibel's privileged communications regarding the trust and prenuptial agreement were sufficiently related to and made in furtherance of that fraud.

## DISCUSSION

*Writ relief*

Extraordinary writ relief is available only where there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.330. Although writ relief is generally not available to review discovery orders, this court will consider writ petitions challenging orders that compel the disclosure of privileged information because in such cases "a later appeal would not remedy any improper disclosure of the information." *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev. 369, 374, 399 P.3d 334, 341 (2017).

Writ relief is also appropriate to clarify an important issue of law, such as the parameters of a privilege. *See Canarelli v. Eighth Judicial Dist. Court*, 136 Nev. 247, 250-51, 464 P.3d 114, 119 (2020) (entertaining a

petition for writ of prohibition to clarify whether Nevada recognizes the petitioner's asserted exception to the attorney-client privilege). We elect to entertain this petition, treating it as one for prohibition, because Seibel challenges a discovery order compelling disclosure of privileged information, and prohibition, not mandamus, is the "appropriate remedy to correct an order that compels disclosure of privileged information." *Las Vegas Dev. Assocs., LLC v. Eighth Judicial Dist. Court*, 130 Nev. 334, 338, 325 P.3d 1259, 1262 (2014).

*Standard of review*

We review the district court's legal determinations regarding the crime-fraud exception de novo. *See Humboldt Gen. Hosp. v. Sixth Judicial Dist. Court*, 132 Nev. 544, 547, 376 P.3d 167, 170 (2016) (reviewing legal questions de novo on petition for writ of mandamus). "Discovery matters are within the district court's sound discretion," and factual findings "are given deference and will not be set aside unless they are clearly erroneous or not supported by substantial evidence." *Canarelli*, 136 Nev. at 251, 464 P.3d at 119 (internal quotation marks omitted).

*Application of Nevada's crime-fraud exception to the attorney-client privilege*

Nevada's attorney-client privilege and crime-fraud exception are statutory. Under NRS 49.095, the attorney-client privilege grants clients "a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications" between the client (or representative) and his or her lawyer (or representative), and between the client's lawyer and the lawyer's representative. But per NRS 49.115(1), Nevada's crime-fraud exception allows documents otherwise privileged under NRS 49.095 to be disclosed when "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit

what the client knew or reasonably should have known to be a crime or fraud."

Neither NRS 49.095 nor NRS 49.115(1) establishes the procedure or burden of proof that courts are to use when determining whether the crime-fraud exception should apply, however, and this court has not clarified those issues before. Both statutes "are taken without substantive change from" Rule 5-03 of the Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, submitted by the Advisory Committee on Rules of Evidence, reprinted in 46 F.R.D. 161, 249-51 (1969), which is widely considered federal common law.[2] Therefore, this court finds federal caselaw interpreting the federal common-law attorney-client privilege and crime-fraud exception persuasive in interpreting NRS 49.095 and NRS 49.115(1). *See, e.g., In re 2015-2016 Jefferson Cty. Grand Jury*, 410 P.3d 53, 59 (Colo. 2018) (following *United States v. Zolin*, 491 U.S. 554, 562-63 (1989), and *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), when interpreting Colorado's attorney-client privilege and crime-fraud exception); *People v. Radojcic*, 998 N.E.2d 1212, 1221-23 (Ill. 2013) (same).

---

[2]NRS 49.095 (subcomm.'s cmt.); NRS 49.115 (subcomm.'s cmt.). Specifically, Rule 503 of the Draft Federal Rules of Evidence or "Supreme Court Standard 503" is widely regarded as the common law crime-fraud exception's enumeration. 3 Mark S. Brodin et al., *Weinstein's Federal Evidence* §§ 503-1, 503.01-10 (2d ed. 2022); *accord United States v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986) ("Although Congress did not adopt [Supreme Court Standard 503], courts have relied upon it as an accurate definition of the federal common law of attorney-client privilege . . . ."). And federal common law, such as Supreme Court Standard 503, is binding over claims of privilege in the federal context under the Federal Rules of Evidence. Fed. R. Evid. 501 (stating that "[t]he common law . . . governs a claim of privilege," unless federal law provides otherwise).

Federal courts "have recognized the attorney-client privilege under federal law as 'the oldest of the privileges for confidential communications known to the common law.'" *Zolin*, 491 U.S. at 562 (quoting *Upjohn*, 449 U.S. at 389). The privilege exists to ensure that clients can freely and confidentially communicate with their legal counsel, which is central "to the proper functioning of our adversary system of justice." *Id.* However, "[s]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose" and is therefore subject to limited exceptions such as the crime-fraud exception. *Id.* at 562-63 (internal quotation marks omitted); *see also* NRS 49.115(1).

In determining whether the crime-fraud exception should apply, the United States Court of Appeals for the Ninth Circuit utilizes a two-part test, which reflects the prevailing approach among federal circuits. *E.g.*, *United States v. Boender*, 649 F.3d 650, 655-56 (7th Cir. 2011); *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999). Under this approach, a party seeking to invoke "the crime-fraud exception must satisfy a two-part test":

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) (alteration in original) (citation omitted) (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381, 382-83 (9th Cir. 1996) (internal quotation

Supreme Court
of
Nevada

7

(O) 1947A

marks omitted)), *abrogated in part on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).

We find these authorities persuasive, and we thus adopt the two-part test utilized by the Ninth Circuit for determining whether the crime-fraud exception should apply. As the *Napster* court concluded, in civil matters, the moving party bears the burden of proving both prongs of the test by a preponderance of the evidence for the crime-fraud exception to apply. *Id.* at 1094-95.

In some circumstances, the district court may determine that in camera review of the privileged documents is necessary before deciding whether the crime-fraud exception applies. In such instances, the district court must first require the moving party to show "'a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572 (citation omitted) (quoting *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)). Generally, "[o]nce that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* But when the privileged communications are documents, the district court must do an in camera review. *In re Grand Jury Investigation*, 810 F.3d 1110, 1114 (9th Cir. 2016). During its in camera review, the district court must determine to which documents specifically the second step applies. *Id.* Particularly,

> [w]hile in camera review is not necessary during step one . . . , a district court must examine the individual documents themselves to determine that the specific attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of the intended, or present, continuing illegality.

*Id.* (internal quotation marks omitted) (following *In re Antitrust Grand Jury*, 805 F.2d 155, 168-69 (6th Cir. 1986)).

*The district court did not err in granting in camera review of Seibel's privileged documents*

As to step one in the analysis, the district court found that Caesars had established by a preponderance of the evidence that Seibel was engaged in or planning a criminal or fraudulent scheme when he sought the advice of legal counsel in the drafting of the prenuptial agreement. The district court based its findings on the prenuptial agreement, the trust, and other evidence before it. While Seibel takes issue with the district court's factual findings, we defer to those findings, as they are supported by substantial evidence in the record and are not clearly erroneous. *See Canarelli*, 136 Nev. at 251, 464 P.3d at 119 (noting that factual findings "are given deference and will not be set aside unless they are clearly erroneous or not supported by substantial evidence"). Accordingly, the district court properly proceeded to step two, conducting an in camera review to determine if the documents were "sufficiently related to and were made in furtherance of the intended, or present, continuing illegality." *In re Grand Jury Investigation*, 810 F.3d at 1114 (internal quotation marks omitted).

*The district court did not abuse its discretion in ordering the disclosure of Seibel's privileged communications after conducting an in camera review*

After conducting an in camera review, the district court found that the crime-fraud exception applied to all of Seibel's privileged documents. Seibel argues that the district court's order was overbroad in disclosing every document. We disagree. While Seibel argues that the district court erred in only quoting from three documents in its order granting Caesars' motion to compel, he does not specifically argue which of

the privileged documents were improperly disclosed or why. *Walker v. Second Judicial Dist. Court*, 136 Nev. 678, 680, 476 P.3d 1194, 1196-97 (2020) (explaining that the burden is on the party seeking extraordinary writ relief to establish that such relief is warranted). Further, we are aware of no legal authority that requires district courts to make specifically enumerated factual findings regarding each document or communication reviewed in camera.

Rather, after reviewing the privileged documents in camera ourselves, we conclude that the district court did not act outside of its jurisdiction in finding that the documents were sufficiently related to and made in furtherance of Seibel's ongoing scheme. We therefore conclude that the district court properly granted disclosure of the privileged documents after conducting an in camera review under Nevada's crime-fraud exception to the attorney-client privilege. *Canarelli*, 136 Nev. at 251, 464 P.3d at 119 ("Discovery matters are within the district court's sound discretion . . . ." (internal quotation marks omitted)). As the district court acted within its jurisdiction, we deny writ relief.[3]

## CONCLUSION

Having determined that the district court properly granted an in camera review of Seibel's privileged communications, and that it did not err in conducting that in camera review, we conclude that Seibel has failed to demonstrate that extraordinary relief is warranted in the form of a

---

[3]We also deny Seibel's petition to the extent that it asks this court to order the sequestration of the district court's minute order that contains quotations from three of the privileged documents, as Caesars' motion to compel was properly granted with respect to every document.

petition for a writ of prohibition.  We further deny Seibel's petition to the extent that it asks for judicial reassignment.[4]

_____, J.
Hardesty

We concur:

_____, J.
Stiglich

_____, J.
Herndon

_____

[4]While this court may order reassignment of a judge under certain circumstances, we determine that such circumstances are not present here. *See FCH1, LLC v. Rodriguez*, 130 Nev. 425, 435, 335 P.3d 183, 190 (2014) (reassigning judge who formed conclusion on the merits based on improperly admitted evidence); *Leven v. Wheatherstone Condo. Corp.*, 106 Nev. 307, 310, 791 P.2d 450, 451 (1990) (reassigning a judge who made numerous errors suggesting favoritism).  Further, this court lifts the stay of the proceedings in the district court that was granted in part on November 10, 2021.